Stacey A. **FLYNN**, Appellant,

v.

**AMERICAN HOME PRODUCTS CORPORATION, et al.,**
Respondents.

No. C8–00–1885.

Court of Appeals of Minnesota.

May 15, 2001.

Ronald S. Goldser, James P. Watts, Jr., Zimmerman Reed, P.L.L.P., Minneapolis, MN, for appellant.

Jack M. Fribley, Bridget M. Ahmann, Peter J. Goss, Faegre & Benson, L.L.P., Minneapolis, MN, for respondents.

Considered and decided by TOUSSAINT, Presiding Judge, ANDERSON and PORITSKY, * Judges.

## OPINION

G. BARRY ANDERSON, Judge

Appellant Stacey A. Flynn brought an action against respondents American Home Products Corporation (AHPC), et al., manufacturers of a brand-name drug, alleging that misrepresentations AHPC made to the federal Food and Drug Administration caused her to ingest a generic version of the drug, and that the generic drug injured her. The district court granted respondents' motion for summary judgment. Because appellant's state common law tort and consumer protection claims are preempted by federal law, we affirm.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

In October 1996, appellant Stacey A. Flynn began taking the diet drug "fen-phen," a blend of fenfluramine and phentermine. Appellant's doctor prescribed the compound after appellant consulted the doctor for weight-loss treatment. The Professional Compounding Centers of America and Professional Compounding Pharmacy, d/b/a/ the Medicine Shoppe Pharmacy, made the generic fen-phen capsules from imported fenfluramine manufactured by Alfa Chemical, an Italian pharmaceutical company.

Appellant ceased taking the generic form of fen-phen in about July 1997. In late 1997, appellant was diagnosed as suffering from aortic insufficiency, commonly described as a leaky heart valve. Appellant claims her fen-phen regimen caused that condition. In October 1998 appellant brought a negligence action against Professional Compounding Centers of America and Professional Compounding Pharmacy and, by amended complaint, added respondents as defendants, alleging negligence and fraud.

Respondent American Home Products Corporation and its subsidiaries manufactured and marketed Pondimin, a brand-name version of fenfluramine hydrochloride. Appellant alleged that respondents, before and after obtaining federal Food and Drug Administration (FDA) approval of the drug, withheld from the FDA information that fenfluramine caused serious health problems such as primary pulmonary hypertension and valvular heart disease. Appellant alleged that, by breaching their duty to disclose known instances of adverse effects of fenfluramine to the FDA, respondents misrepresented the drug as safe and, consequently, physicians nationwide prescribed both brand name and generic versions of fen-phen without knowing the true risks to their patients.

Appellant alleged that, had her doctor known the risks of fenfluramine, later removed from the market after the risks became known, appellant would not have taken the generic version of fen-phen made by the Medicine Shoppe Pharmacy and would not have suffered an injury.

Appellant settled her claim with the pharmacy defendants. Shortly thereafter, respondents moved for summary judgment, arguing that they did not owe appellant any legal duty because she did not use the product they manufactured. Respondents further argued that appellant's fraud-and-misrepresentation-on-the-FDA claims are not actionable torts in Minnesota, nor do they create a cause of action under Minnesota's consumer protection statutes. The district court agreed and granted respondents' motion.

## ISSUE

Are state common-law tort and consumer-fraud claims of manufacturer fraud on the federal Food and Drug Administration (FDA) actionable in Minnesota?

## ANALYSIS

Appellant argues that the district court erred as a matter of law by granting summary judgment to respondents because her tort and consumer fraud claims are actionable in Minnesota. Summary judgment is appropriate when a district court determines that "there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. When reviewing a grant of summary judgment, we must consider (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). When, as in this case, the material facts are not in

dispute, we review de novo the district court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

Although at first blush this case appears to be a products-liability action, appellant insists, in her brief and in oral argument, that it is not:

> Appellant's claims do not sound in product liability * * *. Appellant's claims are that these Respondents deliberately withheld information they were legally obligated [by the FDA] to disclose [to the FDA] * * *. Appellant was injured because these Respondents deliberately violated their legal duties imposed on them as manufacturers of prescription drugs.

Appellant does not dispute the district court's conclusion that she was not injured by respondents' product, Pondimin. Instead, appellant argues that respondents' failure to fulfill its legal reporting duties to the FDA creates three causes of action: (1) fraudulent misrepresentation; (2) negligent misrepresentation; and (3) relief under Minnesota's consumer protection statutes.

### I.

▮▮▮▮ Appellant first argues that Minnesota can and should recognize a tort characterized by other jurisdictions as "fraud-on-the-FDA." The so-called tort of fraud-on-the-FDA creates liability based on a manufacturer's misrepresentations made to the FDA, relied on by a third party, which causes injury to the third party. The district court concluded that Minnesota does not recognize this tort, and this is an issue of first impression in Minnesota appellate courts. We are mindful that "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer*, 413 N.W.2d 283, 286

(Minn.App.1987), *review denied* (Minn. Dec. 18, 1987). It is not the function of this court to establish new causes of action, even when such actions appear to have merit. *Stubbs v. North Mem'l Med. Ctr.*, 448 N.W.2d 78, 81 (Minn.App.1989), *review denied* (Minn. Jan. 12, 1990). As a starting point to our analysis, we review some history of the proposed common-law tort of fraud-on-the-FDA beginning with disputes regarding the use of orthopedic bone screws.

Beginning in 1994, over 5,000 plaintiffs alleged that they were injured by implantation of bone screws in their spines, and filed approximately 2,000 actions in over 60 of the 94 federal judicial districts, claiming that the defendant screw manufacturers' misrepresentations to the FDA regarding the intended use of the screws caused their injuries. *Bruzer v. Danek Med. Inc.*, No. Civ. 3–95–971, 1998 WL 1048225 at *1–*2 (D.Minn. Oct.1, 1998). The judicial panel on multidistrict litigation consolidated and transferred the cases to a federal judge in the Eastern District of Pennsylvania. *Id.* at *1. After pretrial proceedings and a variety of rulings on motions to dismiss, including a determination by the federal district court that federal law preempted the state-law fraud-on-the-FDA claims, the cases were remanded to the originating districts for trial. *Id.; In re Orthopedic Bone Screw Prods. Liab. Litig.*, 159 F.3d 817, 821 (3d Cir.1998), *rev'd sub nom., Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001).

The Pennsylvania court remanded one of those cases to the Federal Court for the District of Minnesota: *Bruzer*. In *Bruzer*, the plaintiffs alleged, among other things, that defendant-manufacturers had conspired to make false representations to the FDA in order to receive the proper approval for the devices. *Bruzer*, 1998 WL

1048225 at *1–*2. Granting the defendants' motion for summary judgment on the basis of earlier pretrial rulings, the federal district court also observed that the plaintiffs had "failed to show that Minnesota [state] law would allow such a claim, or that it differs in any way from the rule that a substantial majority, if not all, of the states would follow" precluding such a claim. *Id.* at *5, n. 5 (citation and quotation omitted).

Meanwhile, other plaintiffs appealed the Pennsylvania federal district court's preemption ruling to the United States Court of Appeals for the Third Circuit. The Third Circuit reversed the Pennsylvania federal district court's pretrial preemption ruling and concluded that if the state law of fraudulent misrepresentation would impose liability on the manufacturer, a fraud-on-the-FDA claim was not preempted by federal medical device statutes. *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 159 F.3d at 829. Thus, the self-described "narrow" holding of *Bone Screw* recognized that existing state law of fraudulent misrepresentation determined whether a plaintiff could recover under a theory of fraud-on-the-FDA. *Id.*

In response to the Third Circuit's ruling, some states have declined to recognize fraud-on-the-FDA as a cause of action under state tort law. *See, e.g., Jones v. Danek Med., Inc.*, No. Civ. A.4:96–3323–12, 1999 WL 1133272 at *8 (D.S.C. Oct.12, 1999) (finding plaintiff failed to demonstrate common-law fraud elements of misrepresentation or causation, and that claim would fail "even if South Carolina recognized such a tort" as fraud-on-the-FDA, which it did not); *Castle v. Danek Med. Inc.*, No. Civ. 96–2485, 1999 WL 1129649 at *2 (W.D.La. Oct.5, 1999) ("no cause of action relating to fraud 'on the FDA' * * * exists" under Louisiana law); *Johnson v. Smith & Nephew Richards, Inc.*, No. 97–

CV–363–K, 1999 WL 1117105 at *2 (N.D.Okla. Sept.30, 1999) (granting summary judgment on other grounds and suggesting "fraud on the FDA" theory of recovery may not be theoretically valid); *Parks v. Danek Med., Inc.*, No. 2:95CV206, 1999 WL 1129706 at *9 (N.D.Ind. June 17, 1999) ("fraud on the FDA" not recognized under Indiana law). Other states, however, have recognized the tort as a derivation of common-law fraud. *See, e.g., Baker v. Smith & Nephew Richards, Inc.*, No. Civ. A.1:97 CV1233RWS, 1999 WL 1129650 at *8 (N.D.Ga. Sept.30, 1999) (fraud-on-the-FDA derived from Restatement (Second) Torts § 533, an indirect fraud claim, supported by Georgia law, but granting summary judgment to medical manufacturer because "intent to defraud the FDA is not intent to defraud the Plaintiffs.")

The defendant medical manufacturers appealed the Third Circuit's decision. The United States Supreme Court granted certiorari and reversed by opinion filed February 21, 2001, five days after oral argument in this case. *Buckman Co.*, 121 S.Ct. at 1017. The Supreme Court determined that the plaintiffs' state-law fraud-on-the-FDA claims conflict with, and are therefore preempted by, the federal statutes regulating premarket approval of medical devices. *Id.*

The U.S. Supreme Court's ruling raises the question of whether appellant's fraud-on-the-FDA claims are likewise preempted by FDA regulations governing premarket approval and post-approval regulation of drugs. Because this issue is new, novel, legal, and decisive, and because the lack of a district court ruling causes no advantage or disadvantage to either party, we elect to review it. *See Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 687 (Minn. 1997) (explaining the requirements for review of issue not addressed in district court); *Pikop v. Burlington N. R.*, 390

N.W.2d 743, 748 (Minn.1986) (preemption is a matter of statutory construction that appellate courts review de novo).

■■■■ The United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; * * * any thing in the Constitution or laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This supremacy provision has given rise to preemption doctrine, under which federal statutes and agency regulations may preempt state law. *Louisiana Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986). State statutes, as well as state common law, may be preempted. *Midwest Motor Exp., Inc., v. International Bhd. of Teamsters,* 512 N.W.2d 881, 887–89 (Minn.1994). State law is not to be preempted unless Congress, by "clear and manifest purpose," intended to do so. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Congress may preempt state law by express statutory language, but preemption may also be implied. *Dahl v. Charles Schwab & Co.,* 545 N.W.2d 918, 922 (Minn.1996). "If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted." *Silkwood v. Kerr McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (citations omitted). The U.S. Supreme Court, in *Buckman,* observed that:

> Policing fraud against federal agencies is hardly a field which the States have traditionally occupied, such as to warrant a presumption against finding federal pre-emption of a state-law cause of action. To the contrary, the relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law. Here, [the

medical device manufacturers'] dealings with the FDA were prompted by the [Medical Device Amendments] * * *. Given this analytical framework, we hold that the plaintiffs' state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by federal law.

121 S.Ct. at 1017 (citations and quotations omitted).

The *Buckman* Court described the comprehensive regulatory scheme for obtaining FDA approval for a medical device, which includes the FDA's disclosure requirements and power to investigate suspected fraud. *Id.* at 1017–18. In addition, the Court reasoned that there are criminal statutes governing the making of false statements to the federal government, and the FDA may respond to fraud by seeking injunctive relief, civil penalties, or criminal prosecution. *Id.* (citing 18 U.S.C. § 1001 (1994 & Supp. IV) (proscribing fraud on the Government of the United States); 21 U.S.C. § 332 (1994) (providing for injunctive relief); 21 U.S.C. § 333(f)(1)(A) (1994) (providing for civil penalties); and 21 U.S.C. § 333(a) (1994) (providing for criminal prosecution)). The Court recognized that the FDA has a "variety of enforcement options that allow it to make a measured response to suspected fraud upon the Agency," and that the flexibility of the statutory scheme "is a critical component of the * * * regulatory framework under which the FDA pursues difficult (and often competing) objectives." *Id.* at 1018.

Considering the FDA's comprehensive enforcement statutes and because "complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential [FDA approval] applicants," the Court held that "[s]tate-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police

fraud consistently with the Agency's judgment and objectives." *Id.* The Court concluded:

> [W]ere plaintiffs to maintain their fraud-on-the-agency claims here, they would not be relying on traditional state tort law which had predated the federal enactments in question. On the contrary, the existence of these federal enactments is a critical element of their case. * * * [The claims are] therefore preempted * * *.

*Id.* at 1020.

In this case, appellant alleges that respondents committed fraud on the FDA by failing to comply with a number of agency regulations requiring disclosure of adverse drug experiences. Specifically, appellant cites 21 C.F.R. § 201.57 (2000), providing that labels contain safety information, and 21 C.F.R. § 314.80–.81 (2000), requiring postmarketing reporting of adverse drug experiences. The disclosure and reporting requirements of those provisions are part of the Food, Drug, and Cosmetic Act's regulation of new drugs, governed by 21 U.S.C. § 355 (1994 & Supp. VI). Violations of § 355 are prohibited acts pursuant to 21 U.S.C. § 331 (1994). As *Buckman* makes clear, the FDA may respond to acts prohibited by § 331 by seeking injunctive relief, civil penalties, or criminal prosecution under the agency's statutory authority. *See Buckman,* 121 S.Ct. at 1017–18.

As in *Buckman,* the existence of state-law claims against applicants for, and recipients of, FDA drug approval for alleged violation of FDA regulations conflicts with the FDA's authority to consistently police fraud within the agency's powers. Like the claims of fraudulent procurement of medical device approval at issue in *Buckman,* the existence of the federal regulations is critical to appellant's claims that those regulations were violated and caused her injuries. Moreover, the *Buckman*

Court's observation that 50 state-law causes of action for violation of the FDA's detailed regulations would increase the burdens placed on applicants for FDA approval applies to drug manufacturers as well as to medical-device manufacturers. For these reasons, we conclude that appellant's fraud-on-the-FDA common-law tort and statutory consumer fraud claims are preempted by federal law and are not actionable in Minnesota.

## II.

Even if federal law did not preempt appellant's fraud-on-the-FDA claims, her claims fail on the merits under Minnesota common law.

### A. *Fraudulent Misrepresentation*

 Appellant's amended complaint alleged that she suffered damages as a result of respondents' fraudulent misrepresentations to the FDA. In Minnesota, a plaintiff must prove five elements to succeed on a claim for fraudulent representation:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge;
>
> (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false;
>
> (3) with the intention to induce another to act in reliance thereon;
>
> (4) that the representation caused the other party to act in reliance thereon; and
>
> (5) that the party suffer pecuniary damage as a result of the reliance.

*Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 532 (Minn.1986). Appellant does not point to any affirmative representations made by respondents that were relied upon by her physician when issuing

the prescription for fen-phen. Instead, appellant seems to argue that the third and fourth elements are met because respondents' failure to reveal damaging information concerning the brand-name drug Pondimin affected the FDA's approval of the drug and, consequently, her physician's decision to prescribe a generic version of fen-phen.

Under Minnesota law, fraudulent misrepresentation based on the concealment of a material fact occurs when one party knowingly conceals a material fact that is "peculiarly within his own knowledge," and the other party relies on the presumption that the fact does not exist. *Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 364, 244 N.W.2d 648, 650 (1976). But central to such a claim is that "there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him." *Id.* Appellant has not presented any Minnesota authority supporting an extension of this duty to third parties, and indeed, the authority we have found holds to the contrary. *See Karlstad State Bank v. Fritsche*, 392 N.W.2d 615, 618 (Minn.App.1986) (no fraud for failure to disclose in the absence of defendant's direct communication with plaintiffs).

Moreover, there is no fiduciary relationship here. The general rule is that "one party to a transaction has no duty to disclose material facts to the other" except "when the parties are in a fiduciary relationship with each other." *Midland Nat'l Bank v. Perranoski*, 299 N.W.2d 404, 413 (Minn.1980) (citation and quotation omitted). "A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other * * *." *Kennedy v. Flo-Tronics, Inc.*, 274 Minn. 327, 331, 143

N.W.2d 827, 830 (1966) (citation and quotation omitted). Although federal regulations required respondents to disclose product safety information to the FDA, respondents did not owe appellant, who did not purchase their product and with whom they had no relationship, the same obligation. *See In re Minnesota Breast Implant Litig.*, 36 F.Supp.2d 863, 880 (D.Minn.1998) (holding that, under Minnesota's fraudulent representation and fraudulent concealment law, a medical manufacturer does not have a duty to disclose to a plaintiff safety information concerning a product sold to the plaintiff by another manufacturer). Thus, appellant has not established that respondents intended that she rely on their representations to the FDA.

Appellant argues that respondents intended all consumers rely on their representations to the FDA and owed all consumers a duty to disclose material facts, but that contention conflicts with Minnesota common law, which requires a stronger relationship and a direct communication. Appellant did not purchase or use respondents' product, and therefore, there was no direct relationship between them, let alone a fiduciary relationship that gave rise to a duty. The district court did not err as a matter of law by granting summary judgment to respondents on this basis.

### B. *Negligent Misrepresentation*

Appellant's amended complaint also alleges that respondent had a duty to appellant to make nonnegligent representations to the FDA. This state law claim, although preempted, would also have failed on the merits. The Restatement (Second) of Torts § 311 (1965) provides that the elements of the tort of negligent misrepresentation are:

(1) a duty of reasonable care in conveying information; (2) breach of that duty

by negligently giving false information; (3) reasonable reliance on the misrepresentations, which reliance is the proximate cause of physical injury; and (4) damages. *Smith v. Brutger Cos.*, 569 N.W.2d 408, 413 (Minn.1997). Even if appellant were able to prove the elements of duty, reasonable reliance, and proximate cause, the Minnesota Supreme Court has recognized negligent misrepresentation involving damages only for pecuniary loss, and has expressly declined to recognize the tort of negligent misrepresentation involving the risk of physical harm. *Id.* at 414. Accordingly, the district court did not err as a matter of law by granting summary judgment to respondents on this claim.

## C. Consumer Fraud Statutes

Finally, we conclude that appellant would not have been successful under Minnesota's consumer fraud statutes, even if the statutes, to the extent they afforded relief for fraud-on-the-FDA, had not been preempted. Appellant's complaint alleged that respondents violated a number of consumer protection statutes: Minn.Stat. § 325D.44 (1998), which prohibits deceptive practices concerning the quality of goods or services, Minn.Stat. § 325F.69 (1998), which prohibits fraud in connection with the sale of any merchandise, and Minn.Stat. § 325D.13 (1998), which prohibits misrepresentation of product ingredients or quality.

 Minn.Stat. § 8.31, subd. 3a (1998) authorizes private action for violations of these statutes by "any person." *Id.* The Minnesota Supreme Court has interpreted the "any person" language broadly, holding that a claim under Minn. Stat. § 8.31 may be brought by a plaintiff who is not the actual purchaser of the defendant's products. *Group Health Plan, Inc., v. Philip Morris Inc.*, 621 N.W.2d 2, 8–11 (Minn.2001). But *Group Health*, answering questions certified by the federal district court in the context of a Rule 12 motion to dismiss, emphasized that a "causal nexus" between the alleged injury and the wrongful conduct that violates the statute is a necessary element of an action to recover damages under § 8.31, subd. 3a. *Id.* at 14. "The statute requires that there must be some legal nexus between the injury and the defendant's wrongful conduct." *Id.* at 14 (citation and quotation omitted). The causal nexus includes a "reliance component" that may be proven by "direct or circumstantial evidence" that is relevant and probative "as to the relationship between the claimed damages and the alleged prohibited conduct." *Id.* at 14–15. Thus, for appellant to prove causation, a necessary element of her statutory consumer fraud claims, she must at least present circumstantial evidence of some reliance on respondents' alleged misrepresentations.

When a motion for summary judgment is made and supported as provided in Minn. R. Civ. P. 56, an adverse party may not rest on mere averments or denials in that party's pleading but must present specific facts showing that there is a genuine issue for trial. Minn. R. Civ. P. 56.05. Summary judgment is mandatory against a party with the burden of proof that fails to establish an essential element of its claim. *Lloyd v. In Home Health, Inc.*, 523 N.W.2d 2, 3 (Minn.App.1994). In response to a motion for summary judgment, a plaintiff must produce sufficient evidence to show a genuine issue of material fact as to each element. *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 410–11 (Minn.1994).

Appellant's response to respondents' summary judgment motion did not include any deposition testimony, affidavits, interrogatory answers, or other evidence con-

necting respondents' drug Pondimin to the alleged injury she sustained by ingesting a generic compound of fen-phen. Instead, the deposition testimony and medical records show that appellant decided to take the generic drug after viewing advertisements placed by unnamed sources and consulting with her doctor and her mother. Appellant alleges that, but for respondents' fraud on the FDA, a physician's desk reference would have contained negative information about Pondimin that would have aided her doctor. But appellant presented no evidence that either she or her physician relied on the physician's desk reference, any representations, or the absence of representations made by respondents concerning Pondimin in the course of deciding that a generic phen-fen compound would be an appropriate treatment.

We conclude that appellant has not presented sufficient evidence to show that there is a genuine issue of material fact concerning causation. Accordingly, we hold the district court did not err by granting respondents' motion for summary judgment on appellant's consumer fraud claims.

## DECISION

State law claims by a third party that drug manufacturers' fraud on the federal Food and Drug Administration caused injury to the third party are preempted by federal law.

**Affirmed.**