# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1813

_____

|  |  |  |
|---|---|---|
| Noble Systems Corporation, a Georgia Corporation, | * * * | |
| Appellant, | * * | |
| v. | * * * | Appeal from the United States District Court for the District of Minnesota. |
| Alorica Central, LLC, a Nevada limited liability company; Whitebox Advisors, LLC, a Minnesota limited liability company doing business as Pandora Select Partners, LP; Pandora Select Partners, LP, a British Virgin Islands limited partnership, | * * * * * * * | |
| Appellees. | * | |

_____

Submitted: January 18, 2008
Filed: October 8, 2008

_____

Before WOLLMAN, BRIGHT, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Noble Systems Corporation sued Alorica Central, LLC, Pandora Select Partners, LP, and Whitebox Advisors, LLC (doing business as Pandora Select

Partners, LP)[1] for tortious interference with a business relationship, fraud and intentional and negligent misrepresentation, conversion, unjust enrichment, and conspiracy to defraud Noble and convert its property. Noble also sued Alorica for replevin. Based on the magistrate judge's[2] report and recommendation, the district court[3] granted Alorica's motion to dismiss and its motion for judicial notice in support of its motion to dismiss. The district court also granted Pandora's motion for judgment on the pleadings. Noble appeals from these decisions. We affirm.

We review *de novo* a district court's dismissal of a claim under Rule 12(b)(6) or Rule 12(c). MM&S Fin., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 364 F.3d 908, 909 (8th Cir. 2004); Faibisch v. Univ. of Minn., 304 F.3d 797, 799-800, 803 (8th Cir. 2002). We accept as true the non-moving party's factual allegations and grant the non-moving party all reasonable inferences from the pleadings. MM&S Fin., 364 F.3d at 909; Faibisch, 304 F.3d at 803.

I.

In August 2004, Noble sold a customer-support call-center system, which included hardware and software, to ACI Telecentrics, Inc., a Minnesota corporation. The title to the hardware passed to ACI, and the software was subject to an ongoing licensing agreement. ACI granted Noble a security interest in the hardware, which

---

[1]Although the brief for Pandora and Whitebox asserts in a footnote that Whitebox is a separate legal entity that was not a party to the events underlying this lawsuit, Whitebox does not appear to have argued for dismissal on that ground. We refer to them collectively as "Pandora" for purposes of this opinion.

[2]The Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

[3]The Honorable Michael J. Davis, now Chief Judge, United States District Court for the District of Minnesota.

Noble failed to perfect. In December 2004, ACI resolved to replace its former line of credit with a line of credit from Pandora, which was accomplished in March 2005. Pandora obtained a security interest in all of ACI's assets, including the hardware purchased from Noble. Pandora perfected its interest by filing with the Minnesota Secretary of State. Gary Kohler was a member of the board of directors for both ACI and Pandora until they entered the credit agreement, at which time he resigned from ACI. Kohler knew of Noble's unperfected security interest.

In early June 2005, Pandora informed ACI that it was "fatigued," but it did not indicate that it was withdrawing its line of credit. On June 15, 2005, however, Pandora informed ACI that it was pulling its line of credit, notwithstanding the fact that ACI was not then in default. ACI was unable to meet its obligations, including its debt to Pandora, without Pandora's line of credit. ACI contacted two parties, one of which was Alorica, about assuming ACI's financing. Upon learning of Alorica's interest, Pandora contacted it directly about purchasing ACI at a closed foreclosure sale. In July, ACI signed a consent and waiver that had been prepared by Pandora and Alorica in which ACI acknowledged that it was in default. The consent and waiver falsely represented that there were no other security interests in the collateral. Pandora thereupon initiated foreclosure proceedings. Alorica purchased the hardware and software from Pandora in a closed sale at a lower price than ACI had asked. Noble was not notified of the foreclosure proceedings, and Pandora did not disburse any proceeds of the sale to Noble. In August 2005, ACI notified its creditors, including Noble, of these events, whereupon Noble contacted Alorica to demand that it pay the software licensing fees it owed. Alorica paid licensing fees for ninety days, beginning from the date of foreclosure, and agreed to reassess the situation after that. After the ninety days, Alorica agreed to enter into a permanent licensing agreement with Noble by December 1, 2005. Alorica did not do so, however, and Noble eventually cut off Alorica's access to the software.

## II. Motion for Judicial Notice

Noble appeals the district court's decision to grant Alorica's motion to take judicial notice of the financing statement that Pandora filed with the Minnesota Secretary of State. When ruling on a motion to dismiss under Rules 12(b)(6) or 12(c), a district court generally may not consider materials outside the pleadings. <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999). It may, however, consider some public records, materials that do not contradict the complaint, or materials that are "necessarily embraced by the pleadings." <u>Id.</u> (internal quotation omitted); <u>see</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 127 S. Ct. 2499, 2509 (2007). Although Noble's complaint artfully avoids noting that Pandora, unlike Noble, perfected its security interest in ACI's hardware, this lawsuit and the events underlying it hinge on that fact. Moreover, Pandora's financing statement is on file with the state of Minnesota and thus is a public record that can be considered even if not mentioned expressly in the pleadings. Accordingly, the district court did not err in considering the financing statement.

## III. Noble's Claims

### A. Tortious Interference with a Contractual Relationship

Minnesota law requires that five elements be established in a claim of tortious interference with a contractual relationship: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." <u>Kallok v. Medtronic, Inc.</u>, 573 N.W.2d 356, 362 (Minn. 1998) (internal quotation omitted).

## 1. Pandora

Noble contends that Pandora tortiously interfered with the ongoing Noble-ACI agreement by foreclosing on its loan to ACI despite its knowledge that Noble would not be fully repaid for the hardware it had sold to ACI and would not continue to be paid maintenance fees as provided for under the contract. Even assuming that Noble's allegations could satisfy the other elements of a claim of tortious interference, they cannot show that Pandora acted without justification.

Ordinarily, the existence of a justification is a question of fact that the defendant must prove. Kallok, 573 N.W.2d at 362. If an affirmative defense such as a privilege is apparent on the face of the complaint, however, that privilege can provide the basis for dismissal under Rule 12(b)(6). Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005); Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). Although our cases require the defense to be apparent on the face of the complaint, this means simply that the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint. See Porous Media Corp., 186 F.3d at 1079; Owen v. Kronheim, 304 F.2d 957, 958 (D.C. Cir. 1962) (per curiam) (considering a defense despite the plaintiff's artful avoidance of mentioning the facts giving rise to the defense because the court was aware of the facts via judicial notice and it justifiably inferred that the defense applied); see also Bradford, 394 F.3d at 1015(considering exhibits attached to the complaint as part of the complaint). Pandora's higher-priority security interest is a matter of public record and is embraced by the complaint, and it raises the affirmative defense that Pandora's conduct was justified.

Generally, a defendant's actions are justified if it pursues its legal rights via legal means. Langeland v. Farmers State Bank of Trimont, 319 N.W.2d 26, 32-33 (Minn. 1982). "The general rule with which we are concerned is that one has a right to be secure in his contracts and to pursue his business or employment free from the

interference of others except where such others act in pursuance of a superior or equal right." <u>Bennett v. Storz Broad. Co.</u>, 134 N.W.2d 892, 897 (Minn. 1965); <u>see</u> <u>Furlev Sales and Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.</u>, 325 N.W.2d 20, 25-26 (Minn. 1982) (reversing a jury verdict and holding that a corporate officer and principal shareholder was justified in interfering with a contract when he acted in the best interests of his corporation); <u>Harman v. Heartland Food Co.</u>, 614 N.W.2d 236, 241 (Minn. Ct. App. 2000) (holding that a tortious interference claim "does not lie where the alleged interferer has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected and employs no improper means" (internal quotation omitted)); <u>Ludowese v. Redmann</u>, 479 N.W.2d 59, 63 (Minn. Ct. App. 1991) (affirming dismissal because the defendant's interference was justified as a matter of law because he lawfully exercised his statutory right of first refusal); <u>see also</u> Prosser and Keeton on Torts 983-86 (W. Page Keeton et al. eds., 5th ed. 1984). Noble cannot dispute that Pandora was the highest-priority creditor. Because a senior secured creditor may foreclose and take the collateral, it seems clear that Pandora was pursuing its legal right by legal means, thus justifying its actions.

Noble argues that Pandora foreclosed on its loan in bad faith, thus negating Pandora's justification. Bad faith can constitute evidence that the defendant's conduct was not justified. <u>Nordling v. N. States Power Co.</u>, 478 N.W.2d 498, 506 (Minn. 1991). Generally, however, bad faith means nothing more than "wrongful conduct done without legal justification or excuse," <u>id.</u>, which is essentially the same test used to determine whether a defendant's actions are justified, as discussed above. <u>See</u> <u>Langeland</u>, 319 N.W.2d at 32-33.

We applied this understanding of bad faith in <u>Thompson v. United States</u>, 408 F.2d 1075 (8th Cir. 1969). In <u>Thompson</u>, we altered the priority of secured interests because of the senior creditor's bad faith towards the junior creditor. We held that the Thompson corporation (owned by Thompson, his sons, and a few other family members) was not operating in good faith because it acquired priority over the

government only by wrongfully participating with the Thompson partnership (consisting of Thompson and his sons) in breaching the partnership's security agreement with the government. "The relationship between the Thompson partnership and the Thompson corporation is so close that the corporation must be charged with participation in the partnership's breach of the regulatory agreement." Id. at 1084. We concluded that the Thompson corporation had more than actual knowledge of the partnership's agreement and that "[u]nder the circumstances of this case, good faith would require the members of the Thompson family and any of its business entities to observe and abide by these contractual agreements." Id. at 1083, 1085.

The facts in Thompson are readily distinguishable from the facts alleged here. In this case, Pandora's alleged bad faith consisted primarily of its knowledge of the unperfected security interest and its foreclosure in the face of its knowledge that junior creditors like Noble would not have their claims satisfied at the foreclosure sale. Neither of these allegations calls into question the legitimacy of Pandora's ends or means. Unlike the Thompson partnership, ACI derived no benefit from the foreclosure, and unlike the Thompson corporation, Pandora cannot be charged with a duty to observe and abide by ACI's contract with Noble. A junior creditor cannot sue a senior creditor for tortious interference solely because the senior creditor forces a foreclosure sale against the junior creditor's wishes or because the sale does not generate enough income to satisfy the junior creditor. Noble has not pleaded facts to support its argument that Pandora was not justified in its foreclosure and sale of ACI's assets, and we thus affirm the district court's dismissal of Noble's tortious interference claim.

Noble's tortious interference claim also rests heavily on its allegations of fraud, which are meritless for the reasons discussed below.

## 2. Alorica

Almost all of the acts that rendered ACI incapable of fulfilling its contractual obligations to Noble were completed prior to Alorica's involvement. According to Noble's complaint, Gary Kohler facilitated Pandora in its move to become the primary creditor of ACI. Pandora notified ACI that it was pulling ACI's line of credit on June 15, 2005. Because Pandora had no contact with Alorica until June 17, 2005, the only allegedly wrongful act Alorica could have committed was its declining to purchase ACI's assets directly from ACI and instead agreeing to buy them at a foreclosure sale. There appears to be no basis for holding that Alorica had a legal or equitable duty to accept ACI's offer rather than Pandora's offer, and Alorica's decision to buy from Pandora could not have been the cause of the events that were set in motion prior to Alorica's involvement. To borrow a concept from another area of tort law, Alorica had no duty to rescue ACI, much less Noble. Accordingly, the district court did not err by dismissing the tortious interference claim against Alorica.

### B. Fraud; Intentional and Negligent Misrepresentation

Noble claims that Pandora and Alorica are liable for either their fraudulent and intentional misrepresentations or their negligent misrepresentations. To succeed in a fraudulent misrepresentation claim under Minnesota law, a plaintiff must prove that:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

-8-

Hoyt Props., Inc. v. Prod. Res. Group, L.L.C., 736 N.W.2d 313, 318 (Minn. 2007) (internal quotation omitted); see M.H. v. Caritas Family Servs., 488 N.W.2d 282, 289 (Minn. 1992). The facts necessary to prove each element must be specifically pleaded. Fed. R. Civ. P. 9(b).

To succeed in a negligent misrepresentation claim under Minnesota law, a plaintiff must prove that: the defendant, by its failure to use reasonable care, made a false representation or failed to communicate information that it knew or should have discovered; the misrepresentation occurred in the course of the defendant's business or in a transaction in which the defendant had a pecuniary interest; the defendant intended that the plaintiff rely on the misrepresentation in the plaintiff's business transactions; and the plaintiff reasonably relied on the misrepresentation and suffered harm as a result. Florenzano v. Olson, 387 N.W.2d 168, 174 & n.3 (Minn. 1986).

In both intentional and negligent misrepresentation claims, the plaintiff must prove some relationship that is sufficient to create a duty owed by the defendant to the plaintiff, that the plaintiff relied on the defendant's misrepresentation, and that it thereby suffered harm. See L & H Airco, Inc. v. Rapistan Corp., 446 N.W.2d 372, 380 (Minn. 1989); Flynn v. Am. Home Prods. Corp., 627 N.W.2d 342, 349-50 (Minn. Ct. App. 2001). These requirements are all fatal to Noble's misrepresentation claims.

### 1. Pandora and Alorica

Noble claims that the consent and waiver agreement that Pandora and Alorica prepared for ACI to sign was fraudulent because it falsely represented that Noble did not have a security interest in some of ACI's assets. Assuming, *arguendo*, that the consent and waiver was a statement made by Pandora and Alorica to Noble and not by ACI to Pandora and Alorica, neither Pandora nor Alorica had a duty to not make false representations to Noble, who was not a party to the agreement. See Flynn, 627 N.W.2d at 350. Additionally, there is no proffered or apparent reason why Pandora

or Alorica would intend or expect that Noble would in any way rely on the statement in the consent and waiver that Noble had no security interest in ACI's assets. Moreover, these claims require that the plaintiff actually rely on the misrepresentation to its detriment. Hoyt, 736 N.W.2d at 318. None of Noble's acts or omissions can be construed as having been made in reliance on the statement that Noble did not have a security interest in any of ACI's property. Nor can any fact alleged explain how such reliance, if it existed, could have caused the loss described in the complaint.

Noble also claims that Pandora and Alorica fraudulently failed to timely inform Noble that Pandora was foreclosing on its security interest and that Alorica would be purchasing ACI's assets. Nondisclosure is fraudulent only if the defendant had a legal or equitable obligation to disclose to a plaintiff who was entitled to receive the information. The default rule is that one party to a transaction has no duty to disclose facts to another party. L & H Airco, 446 N.W.2d at 380. Minnesota law does not appear to recognize any duty to disclose information to third parties with whom no relationship exists. Flynn, 627 N.W.2d at 350. Noble argues that Minnesota has upheld fraudulent concealment claims as to third parties, but the cases it cites do not support this contention. See Vikse v. Flaby, 316 N.W.2d 276, 278-79, 284 (Minn. 1982) (a corporation defrauded its investors when its agents lied to and withheld information from an investment advisor with intention that the advisor would induce investors to invest in the corporation based on the agents' lies and omissions); Richfield Bank & Trust Co. v. Sjogren, 244 N.W.2d 648, 652 (Minn. 1976) (bank liable for nondisclosure to persons borrowing money from the bank). The facts that support Noble's assertion that there was a relationship between Noble and Pandora before the foreclosure boil down to Pandora's knowledge of Noble's unperfected security interest, which was not sufficient to create a duty to disclose. See L & H Airco, 446 N.W.2d at 380. Even if such a duty existed, Noble does not allege that it took or failed to take any action that could be construed as relying on Pandora's failure to communicate that foreclosure proceedings were pending. Further, there is no causative link between Noble's ignorance of the foreclosure and its junior security

interest, which is the most direct cause of its loss. Noble has not sufficiently pleaded its fraud claims, and the district court correctly dismissed them.

## 2. Alorica

Noble's complaint alleges that Alorica falsely represented itself as being ACI until ACI publicized the foreclosure and that it falsely promised to purchase a permanent software license at some time in the future. On appeal, Noble concedes that these deceptions by themselves did not constitute fraudulent misrepresentation. Instead, Noble argues only that they are evidence that Alorica conspired with Pandora to defraud Noble. Thus, the fraud claim against Alorica was correctly dismissed.

## C. Conversion and Replevin

Noble asserts that Pandora and Alorica converted the hardware and software it sold to ACI. "The elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest." Olson v. Moorhead Country Club, 568 N.W.2d 871, 872 (Minn. Ct. App. 1997) (internal quotation omitted). "A plaintiff's lack of an enforceable interest in the subject property is a complete defense against conversion." Lassen v. First Bank Eden Prairie, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994). The sale agreement between Noble and ACI, which Noble attached as Exhibit A to its complaint, states that title passed to ACI upon delivery. Therefore, the only interest in the property that Noble possessed was a security interest. Noble cannot dispute that Pandora possessed a higher priority security interest that allowed it to take title to the collateral and sell it. Because Noble possessed no property interest that it could enforce against Pandora or Alorica, its conversion claim fails.

Replevin, like conversion, is a way to test the superiority of property rights, but with the ability to recover the property itself instead of damages. Widgren v. Massie,

352 N.W.2d 420, 424-25 (Minn. Ct. App. 1984). Noble's replevin claim against Alorica fails for the same reasons as its conversion claim.

### D. Civil Conspiracy and Unjust Enrichment

Noble alleges that Pandora and Alorica conspired to convert the equipment that Noble sold to ACI and to defraud Noble. A civil conspiracy claim requires an underlying tort. D.A.B. v. Brown, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997) (citing Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950)). Similarly, a claim for "[u]njust enrichment may be founded on failure of consideration, fraud, or mistake, or "situations where it would be morally wrong for one party to enrich himself at the expense of another." Mon-Ray, Inc. v. Granite Re, Inc., 677 N.W.2d 434, 440 (Minn. Ct. App. 2004) (internal quotation omitted). Noble bases its unjust enrichment claim on its allegations of fraud and other tortious conduct, including tortious interference. Because there is no underlying fraud, conversion, or other tort to support either the conspiracy or unjust enrichment claims, these claims must also fail.

### IV. Conclusion

The judgment is affirmed.

_____

-12-