[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

------------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 5, 2007
THOMAS K. KAHN
CLERK

No. 06-10672
Non-Argument Calendar

------------------------------------------

D.C. Docket Nos.
05-60746-CV-WPD & 99-20146-BKC-PG

In Re: FOREX FIDELITY INTERNATIONAL,

Debtor.

_____

MARIKA TOLZ,

Plaintiff-Appellant,

versus

OLITA CHERSE HARDIN,
JUSTIN S. SALLUSTO,
RONALD C. GEORGE,
E. MICHAEL THOMAS,
MARY HARDIN,

Defendants-Appellees.

----------------------------------------------------------------

Appeal from the United States District Court
for the Southern District of Florida

----------------------------------------------------------------

**(January 5, 2007)**

Before EDMONDSON, Chief Judge, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

This bankruptcy case presents an appeal by the trustee of the debtor, Forex Fidelity International, Inc. ("Forex"), of an order issued by the district court affirming the bankruptcy court's decision not to avoid as preferences certain payments made to Forex's creditors.[1]  No reversible error has been shown; we affirm.

Forex, which operated a business for its customers to purchase and trade foreign currency pursuant to a customer account agreement, filed a voluntary petition under Chapter 11 of the Bankruptcy Code on 8 January 1999.[2]  In the fall of 1998, less than 90 days before Forex filed for bankruptcy, various customers requested -- and received -- a return of deposits given to Forex.  These customers included Olita Cherese Hardin, Justin S. Sallusto, Ronald C. George, E. Michael Thomas, and Mary Hardin (the "Hardin defendants").[3]  Marika Tolz, the

---

[1]We note that Tolz v. Gawlick, No. 06-10771, another appeal by the trustee in this case, is pending before us.  In Gawlick, as in the present appeal, Forex's trustee appeals the district court's decision affirming the bankruptcy court's conclusion that transfers made by Forex were not avoidable as preferences.  The instant case was not consolidated with the Gawlick case by the district court; and these cases have not been consolidated on appeal.

[2]Forex's bankruptcy case was converted to Chapter 7 on 1 March 1999.

[3]The Trustee brought a complaint to recover preferential transfers against each creditor individually; but the bankruptcy court consolidated the cases of the Hardin defendants.

bankruptcy trustee for Forex (the "Trustee"), filed complaints against the Hardin defendants under 11 U.S.C. § 547(b) to avoid preferential transfers made to them.

The case proceeded to trial in the bankruptcy court in September 2004. After a bench trial, the bankruptcy court rejected the argument raised by the Hardin defendants that the stockbroker defense of 11 U.S.C. § 546(e) applied to prevent the Trustee from avoiding the transfers in this case. But the bankruptcy court did find that the Trustee could not avoid payments made to the Hardin defendants as preferences because the payments were made in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2) (the "ordinary-course-of-business-defense"). In reaching this decision, the bankruptcy court determined that Forex had not operated a Ponzi scheme, noting in particular that Forex did not offer a guaranteed high rate of return to investors and that the record lacked evidence that funds from later investors were used to pay earlier investors. The bankruptcy court also explained that, at an earlier hearing, the Trustee conceded that Forex did not operate a Ponzi scheme.[4]

The Trustee appealed to the district court, arguing that the bankruptcy court had erred in finding that Forex had not operated a Ponzi or Ponzi-type scheme and

---

[4]At that hearing, the Trustee instead argued that Forex operated a scheme with "some similar characteristics [of a Ponzi scheme,] but it's not exactly a Ponzi scheme, like you'd read out of Black's Law [D]ictionary."

that the ordinary-course-of-business-defense applied. The district court affirmed the bankruptcy court on all claims.

On appeal, the Trustee argues that the ordinary-course-of-business-defense does not apply to the transactions that Forex conducted with the Hardin defendants. Because we are the "second court of review of a bankruptcy court's judgment," we examine independently the bankruptcy court's factual and legal determinations; and we use the same standards of review as the district court. In re Issac Leaseco, Inc., 389 F.3d 1205, 1209 (11th Cir. 2004).

"A determination of ordinary business terms under section [547(c)(2)] is a question of fact subject to the clearly erroneous standard of review. A conclusion by the district court that the factual findings of the bankruptcy court are not clearly erroneous is normally entitled to some persuasive weight." Id. (internal quotation and citation omitted). And "[c]lear error is a highly deferential standard of review." Holton v. City of Thomasville Sch. Dist., 425 F.3d 1325, 1350 (11th Cir. 2005). A "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 105 S.Ct. 1504, 1511 (1985) (internal quotation omitted). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact

4

simply because it is convinced that it would have decided the case differently." Holton, 425 F.3d at 1351 (quotation omitted).

Under 11 U.S.C. § 547(b), a trustee may avoid preferential transfers made "to or for the benefit of a creditor" by the debtor on or within 90 days before the debtor filed his bankruptcy petition. But a trustee may not avoid some transfers:

> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (1999).[5] The purpose of the ordinary-course-of-business defense is "to leave undisturbed normal financial relations." In re Craig Oil Co., 785 F.2d 1563, 1566 (11th Cir. 1986) (internal quotation omitted). The defense "should protect those payments which do not result from unusual debt collection or payment practices." Id.

---

[5]Like the bankruptcy court and district court, we apply the version of section 547 in effect when Forex filed its bankruptcy petition.

A creditor who asserts the ordinary-course-of-business defense has the burden of showing each of the three elements of 11 U.S.C. § 547(c)(2). "Although the first two elements of the defense pertain to the conduct of the parties toward one another, the third element involves a broader inquiry." Issac Leaseco, 389 F.3d at 1210. Therefore, about the third element, "[a] creditor must show that the disputed transaction was made both in the course of regular dealings between the parties and in accordance with the standards of the relevant industry." Id.

In this case, the Trustee argues that the Hardin defendants did not produce evidence in support of the first two elements of the ordinary-course-of-business defense because the defendants were investors with Forex instead of creditors who received money from Forex in payment of a debt. But, as the district court explained, the Trustee only can seek to avoid a preferential transfer made "to or for the benefit of a creditor." See 11 U.S.C. § 547(b)(1). And the Trustee does not point us -- in our review of the bankruptcy's court factual findings for clear error -- to evidence that supports the claim that the payments made by Forex to the Hardin defendants were not in regular dealings between the parties.

The Trustee also contends that the Hardin defendants failed to produce evidence that Forex's payments to them conformed with industry standards, which is required to satisfy the third element of the ordinary-course-of-business defense.

6

The record contains deposition testimony of N.R. Karve, who gave $10,000 to Forex to buy foreign currency.  After conducting only a few trades, Karve requested -- and received -- the balance of funds invested with Forex.  Therefore, the record contains evidence that returning invested funds to its customers was part of the ordinary course of Forex's business.  The Trustee has not persuaded us that the bankruptcy court's finding -- that Forex's transactions with the Hardin defendants satisfied the requirements of the ordinary-course-of-business defense -- was clearly erroneous.[6]

The Trustee next contends that Forex operated a Ponzi or "Ponzi-type" scheme and that, as a result, the transfers made from Forex to the Hardin defendants could not have been made in the ordinary-course-of-business.  We review the bankruptcy court's factual determination that Forex did not operate a Ponzi scheme for clear error.[7]  See In re Club Associates, 951 F.2d 1223, 1228 (11th Cir. 1992) ("Factual findings by the bankruptcy court are reviewed under the

---

[6]The Trustee asserts that the district court improperly relied on Roderick Hudnell's affidavit, which was submitted as part of the Gawlick case, in determining that Forex's transactions with the Hardin defendants occurred in the ordinary-course-of-business.  Although the Trustee included Hudnell's affidavit and a transcript of his deposition testimony in the designation of items to be included in the record on appeal in the case of Ronald George, one of the Hardin defendants, we conclude that, even without consideration of the Hudnell affidavit, the bankruptcy court did not clearly err in deciding that the ordinary-course-of-business defense applied.

[7]We note that the Trustee does not argue that the district court applied the wrong standard in reviewing for clear error the bankruptcy court's determination that Forex did not operate a Ponzi scheme.

limited and deferential clearly erroneous standard."). "[A] Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." United States v. Silvestri, 409 F.3d 1311, 1317 n.6 (11th Cir. 2005); see also Cunningham v. Brown, 44 S.Ct. 424 (1924) (providing origin for "Ponzi scheme").

The Trustee cites the affidavit of Bruce Prestin, an accountant who reviewed Forex's books and records for the Trustee before the 2004 bankruptcy court trial. In his affidavit, Prestin stated, among other things, that money received by Forex from the Hardin defendants was co-mingled. The Trustee also relies on the trial testimony of Mark Singer, who worked for Forex and testified that Forex was underfunded. In addition, the Trustee cites Karve's testimony that a Forex representative told him that he would receive large profits on his investments with the company. But, as the district court noted, it is not clear that these statements to Karve were anything more than marketing puffery. Even though the record indicates that Forex may not have operated a well-run business, the record contains account statements showing that trades in foreign currency were made on Karve's account; and when Karve asked Forex for the balance of the funds in his account, he received that payment. Based on the record before us, we cannot say

8

that the bankruptcy court clearly erred in determining that Forex did not operate a Ponzi or Ponzi-type scheme.[8]

Therefore, we conclude that the bankruptcy court did not clearly err in determining that the ordinary-course-of-business defense applied in this case; and we affirm the denial of the Trustee's complaints to avoid preferential transfers made to the Hardin defendants.

AFFIRMED.

---

[8] As a result, we need not decide whether a debtor who operates a Ponzi scheme can make transfers in the ordinary-course-of-business under 11 U.S.C. § 547.