IN RE: PETTERS COMPANY,
INC., et al, Debtors.

(includes: Petters Group Worldwide, LLC; PC Funding, LLC; Thousand Lakes, LLC; SPF Funding, LLC; PL Ltd., In.; Edge One LLC; MGC Finance, Inc.; PAC Funding LLC; Palm Beach Finance Holdings, Inc.)

In re: Polaroid Corporation,
et al., Debtors.

(includes: Polaroid Holding Company; Polaroid Consumer Electronics, LLC; Polaroid Capital, LLC; Polaroid Latin America I Corporation; Polaroid Asia Pacific LLC; Polaroid International Holding LLC; Polaroid New Bedford Real Estate, LLC; Polaroid Norwood Real Estate, LLC; Polaroid Waltham Real Estate, LLC)

In re: Petters Capital LLC, Debtor.

Douglas A. Kelley, Trustee for Petters Company, Inc. and Petters Group Worldwide, LLC; John R. Stoebner, Trustee for Polaroid Corporation, et. al.; and Randall L. Seaver, Trustee for Petters Capital, LLC, Plaintiffs,

v.

JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; One Equity Partners LLC; Jacques A. Nasser; Lee M. Gardner; Charles F. Auster; James W. Koven; Rick A. Lazio; J. Michael Pocock; William L. Flaherty; and Ira H. Parker, Defendants.

JOINTLY ADMINISTERED UNDER
CASE NO. 08-45257
Court File No. 08-45257
Court File Nos: 08-45258 (KHS), 08-45326 (KHS), 08-45327 (KHS), 08-45328 (KHS), 08-45329 (KHS), 08-45330 (KHS), 08-45331 (KHS), 08-45371 (KHS), 08-45392 (KHS)
JOINTLY ADMINISTERED UNDER

CASE NO. 08-46617
Court File. No. 08-46617
Court File Nos. 08-46621 (KHS), 08-46620 (KHS), 08-46623 (KHS), 08-46624 (KHS), 08-46625 (KHS), 08-46626 (KHS), 08-46627 (KHS), 08-46628 (KHS), 08-46629 (KHS)
CASE NO. 09-43847
ADV. 10-4443, ADV. 10-4444, ADV. 10-4445

United States Bankruptcy Court,
D. Minnesota.

Signed August 31, 2016

See also 499 B.R. 342.

716

Richard B. Drubel, Colleen A. Harrison, Boies, Schiller & Flexner LLP, Hanover, NH, Douglas L. Elsass, Lori A. Johnson, Nilan Johnson Lewis PA, Adam A. Gillette, Thomas E. Jamison, Fruth, Jamison & Elsass PLLC, Kevin M. Magnuson, Kelley Wolter & Scott PA, Minneapolis, MN, Jonathan R. Voegele, Boies Schiller & Flexner LLP, Hanover, NH, for Plaintiffs.

Kevin M. Decker, Benjamin Gurstelle, John R. McDonald, Briggs and Morgan, P.A., Minneapolis, MN, William T. Pilon, Isaac M. Rethy, Thomas C. Rice, David J. Woll, Simpson Thacher & Bartlett LLP, New York, NY, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR DISMISSAL

KATHLEEN H. SANBERG, CHIEF UNITED STATES BANKRUPTCY JUDGE

These adversary proceedings originate from the failure of the Tom Petters Ponzi scheme, the history of which has been well documented[1] in this district as well as

---

1. *See e.g.* Complaint at ¶¶ 38-53, Douglas A. Kelley, in his Capacity as the Court-Appointed

others nationwide.[2] They are brought jointly by the trustees of various Petters owned or controlled entities—Douglas A. Kelley as the trustee for Petters Company, Inc. ("PCI") and Petters Group Worldwide, LLC ("PGW") (either " PCI Kelley" or "PGW Kelley", or collectively "Kelley"), John Stoebner ("Stoebner") as the Trustee for Polaroid Corporation, et al. ("Polaroid"), and Randall L. Seaver ("Seaver") as the trustee for Petters Capital, LLC ("Petters Capital") (together, the "Plaintiffs")— against JPMorgan Chase & Co. ("JPMorgan"), JPMorgan Chase Bank, N.A. ("JPM Chase Bank") (together "JPMC"), One Equity Partners, LLC ("One Equity"), (together, the "JPMC Defendants"), Jacques A. Nasser, Less M. Gardner, Charles F. Auster, James W. Koven, Rick A. Lazio, J. Michael Pocock, William L. Flaherty, and Ira H. Parker (together, the "Individual Defendants"), (all together, the "Defendants").[3]

These adversary proceedings are before the Court for ruling on the Defendants' motions to dismiss the three pending adversary proceedings under Fed. R. Civ. P. 12(b) (6), as incorporated by Fed. R. Bankr. P. 7012(b).[4] These adversary proceedings were brought jointly by the Plaintiffs ("Joint Adversary Proceedings"). The complaints in all three cases are identical, as are the motions to dismiss and the voluminous briefing submitted in support thereof.

The Defendants appeared by their attorneys David J. Woll, Isaac M. Rethy, and John R. McDonald. The Plaintiffs appeared by their attorneys Thomas E. Jamison, Lori A. Johnson, Richard B. Drubel, Jr., and Jonathan R. Voegele. This decision is based on the written submissions for all of the motions, the Joint Adversary Complaints (or "Complaint"), as well as the arguments of counsel at oral argument on October 22, 2014.

This Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 157(b)(1) & 1334, Fed. R. Bankr. P. 7001, and Local Rule 1070-1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H). Venue in this Court

---

Chapter 11 Trustee of Debtors Petters Company, Inc., et al. v. JPMorgan Chase & Co., et al., Adv. No. 10–04443 (Bankr.D.Minn. Oct. 10, 2010), ECF No. 1 (hereinafter "Adv. No. 10–4443").

**2.** See e.g., In re Petters Co., Inc., 401 B.R. 391 (Bankr.D.Minn.2009), aff'd, 620 F.3d 847 (8th Cir.2010); In re Petters Co., Inc., 440 B.R. 805 (Bankr.D.Minn.2010); In re Petters Co., Inc., 506 B.R. 784 (Bankr.D.Minn.2013); In re Petters Co., Inc., 548 B.R. 551 (Bankr.D.Minn. 2016); In re Polaroid Corp., 472 B.R. 22 (Bankr.D.Minn.2012), aff'd, 779 F.3d 857 (8th Cir.2015); see also Peterson v. Winston & Strawn LLP, 729 F.3d 750, 751 (7th Cir.2013); Peterson v. Somers Dublin Ltd., 729 F.3d 741, 744 (7th Cir.2013); United States Sec. and Exch. Comm'n v. Quan, 817 F.3d 583, 587–89 (8th Cir.2016); Varga v. U.S. Bank Nat'l Ass'n, 764 F.3d 833, 836–37 (8th Cir.2014); In re Cypress Fin. Trading Co., L.P., 620 Fed.Appx. 287, 288 (5th Cir.2015); In re Palm Beach Fin. Partners, L.P., 527 B.R. 518, 521 (S.D.Fla.

2015); In re Palm Beach Fin. Partners, L.P., 517 B.R. 310, 319–21 (Bankr.S.D.Fla.2013).

**3.** The labels given to the Defendants for purposes of this decision are different from those used in the Complaint in order to avoid confusion.

**4.** There is a fourth proceeding ("PGW Adversary") brought solely by Douglas A. Kelley, in his capacity as the Court-Appointed Chapter 11 Trustee of Debtor Petters Group Worldwide, LLC against JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A., Adv. No. 10–04446 (Bankr.D.Minn.). The complaint in that adversary proceeding contains an additional preference count not included in the Joint Adversary Complaint, as well as additional fact pleading. The parties represented that the motion to dismiss in the PGW Adversary is not part of the larger presentation on the motions in these Joint Adversary proceedings. Therefore, it will not be addressed in this decision.

is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

These adversary proceedings and the main bankruptcy cases were reassigned when then Chief Judge Gregory F. Kishel retired on May 31, 2016. The undersigned hereby certifies familiarity with the record and determines that the matter at bar may be treated without prejudice to the parties in accordance with Fed. R. Civ. P. 63, as incorporated by Fed. R. Bankr. P. 9028.

## I. PROCEDURAL HISTORY

The underlying bankruptcy case of each debtor was commenced in late 2008, with the exception of Petters Capital, which was commenced in early 2009. These adversary proceedings were commenced in the Fall of 2010, along with over 200 other adversary proceedings aimed at clawback and remediation of the failed Petters Ponzi scheme. In February 2011, after their motion to withdraw the reference was denied, the Defendants filed these motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) in lieu of filing an answer. These particular adversary proceedings did not proceed on the same procedural track[5] as the majority of the clawback cases since these adversary proceedings posed unique[6] fact and complex legal issues. Over the course of the next three years, numerous supplementary memoranda were filed by both sides and the mo-

tions were set for oral argument in the fall of 2014.

Prior to oral argument, the parties entered into a stipulation dismissing Counts I and IX in the Joint Adversary Proceedings without prejudice.[7] The Plaintiffs' claim for unjust enrichment in Count VIII was treated in *Common Issues III*,[8] where the Court held the claims must be dismissed. The Plaintiffs concede that the holding in *Common Issues III* applies to their unjust enrichment claims and withdraw Count VIII[9]. The only remaining claims at issue are the fraudulent transfer claims under Chapter 5 of the Bankruptcy Code and the Minnesota enactment of the Uniform Fraudulent Transfer Act ("MUFTA").[10]

The motions were presented at oral argument on October 22, 2014. At the conclusion of oral argument the matters were taken under advisement.

## II. FACTS

The following facts are derived from those alleged in the Complaint that is the subject of these motions to dismiss. The Court has not considered any supplementary or extrinsic facts or documents on these motions to dismiss, as discussed below.

In 2002, One Equity, then a subsidiary of Bank One Corporation, acquired a ma-

---

5. *See, e.g., In re Petters Company, Inc., et al.,* 494 B.R. 413 (Bankr.D.Minn.2013) ("Common Issues I"); *In re Petters Company, Inc., et al.,* 495 B.R. 887 (Bankr.D.Minn.2013) ("Common Issues II"); and *In re Petters Company, Inc., et al.,* 499 B.R. 342 (Bankr. D.Minn.2013) ("Common Issues III"). *See also* Order on Motions for Dismissal on Common Issues Treated in Memoranda Dated June 19, 2013, August 30, 2013, and September 30, 2013, *In re Petters Company, Inc., et al.,* No. 08–45257, ECF No. 2158.

6. *See e.g.,* Adv. No. 10–4443 ECF Nos. 35 and 36. "Separate Identification of Unique Issues".

7. Adv. No. 10–4443, ECF No. 48.

8. *In re Petters Co., Inc.,* 499 B.R. 342 (Bankr. D.Minn.2013).

9. Adv. No. 10–4443, ECF No. 51.

10. Now the Uniform Voidable Transactions Act. *See* Minn. Stat. § 513.41, *et seq.* (2015).

jority stake in Polaroid,[11] which was a publicly-traded company. One Equity became affiliated with JPMorgan when Bank One merged with JPMorgan in 2004. At the end of 2002, Petters Company, Inc. ("PCI") entered into a brand licensing agreement with Polaroid. Tom Petters created a business called Petters Consumer Brands, LLC ("PCB") to use the license. PCB began selling consumer electronics under the Polaroid name pursuant to the licensing agreement in 2003.

In 2004, Polaroid's market for its product was declining and the JPMC Defendants decided to sell their interest in Polaroid. The Plaintiffs allege that the JPMC Defendants targeted Tom Petters and PCB as buyers because of PCB's use and reliance on the licensing agreement. The JPMC Defendants allegedly threatened Petters with termination of the licensing agreement if he did not purchase Polaroid. Ultimately, Tom Petters, using PCB, agreed to purchase Polaroid under an agreement executed in January 2005. The funds for the purchase were to be deposited into one of two escrow accounts in the name of PGW and/or PCB ("Escrow Accounts").

During the sale process, JPMC acted as an advisor to Polaroid and to Tom Petters, in his individual capacity for a fee of approximately $4 million.

On April 27, 2005, the deal closed and PCB bought the outstanding shares of Polaroid stock for $12.08 per share for an approximate total purchase price of $426 million. The JPMC Defendants received approximately $241 million and certain Individual Defendants, collectively, received approximately $15.4 million for their shares of stock. The Plaintiffs allege that JPMC financed PCB's acquisition of Polar-

oid. They also allege, however, that none of JPMC's money was used for the purchase as Tom Petters diverted Ponzi scheme funds from his other companies and other investors and deposited those funds into the Escrow Accounts.

On April 28, 2005, the day after the sale closed, Polaroid closed on a credit facility with JPMC ("Polaroid Obligation"). The credit facility had two components: a $125 million Term Loan and a $225 million Revolver (together, the "Polaroid Credit Facility"). The full Term Loan Proceeds were disbursed and approximately half of the Revolver, or $60 million, was advanced. In order to secure the Polaroid Credit Facility, Polaroid granted JPMC a first lien on all of its assets ("Polaroid Pledge"). The JPMC Defendants were allegedly paid $4.5 million in commitment fees for the Credit Facility. (These fees are treated as part of the Polaroid Credit Facility Transfers.)

The Plaintiffs allege that the Polaroid Credit Facility proceeds were used to pay the debt incurred to fund the Escrow Accounts for the acquisition of Polaroid by Tom Petters.

Over the next three years, the Term Loan and Revolver were paid in full, and ahead of schedule, although Polaroid was not generating sustainable profits. The Term Loan was repaid by late spring of 2007 and the Revolver was repaid by February 2008. Polaroid paid these obligations by selling assets (real estate and intellectual property) and borrowing $40 million from PCI. Thereafter, Polaroid filed its bankruptcy petition on December 18, 2008.

In these adversary proceedings, the Plaintiffs seek to avoid all transfers made to the Defendants for the stock purchase

---

**11.** "Polaroid" refers to both Polaroid Corporation and its parent, Polaroid Holding Company ("PHC").

and the associated advisor fees ("Acquisition Transfers") as both actually and constructively fraudulent transfers. The Plaintiffs also seek to avoid the incurrence of the Polaroid Obligation, the granting of a lien in favor of JPMC for the Polaroid Pledge, and all transfers to JPMC in repayment of the Polaroid Obligation under the Credit Facility ("Polaroid Credit Facility Transfers") as both actually and constructively fraudulent transfers. The Defendants have filed these motions to dismiss Counts II through VII.

## III. LEGAL STANDARDS

### A. Stating a Claim

The Defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012(b), for dismissal with prejudice of all claims in the Joint Adversary Proceedings. Their motions assert that the Plaintiffs have failed to plead facts sufficient to make out a plausible case for avoidance.[12]

A party must meet the pleading requirements under Fed. R. Civ. P 8(a)(2), as incorporated by Fed. R. Bankr. P. 7008. To properly state a claim for relief under Rule 7008, a plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Further, to meet this standard and survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A statement is plausible if the "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the [conduct] alleged." *Iqbal*, 556 U.S. at 663, 129 S.Ct. 1937.

The complaint must also allege enough facts to show that success on the merits is more than a sheer possibility. *Id.* A plaintiff must "assert facts that affirmatively and plausibly suggest that it has the right [it] claims ... rather than facts that are merely consistent with such a right." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir.2007) (citing *Twombly*, 550 U.S. at 554–57, 127 S.Ct. 1955). The allegations do not have to rise to the level of being probable. *Id.* Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *see also Skinner v. Switzer*, 562 U.S. 521, 529–30, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011).

▇ The Eighth Circuit set out the following principles to aid a court in determining whether a complaint meets the standards of *Iqbal* and *Twombly:*

1. The court must take the plaintiff's factual allegations as true;

2. No deference need be given to legal conclusions or formulaic recitation of the elements of a cause of action; they may be set aside in the weighing of the complaint as a whole;

3. Some allegations of fact may be so indeterminate that they require further factual enhancement in order to state a claim;

4. The complaint should be read as a whole, not parsed piece-by-piece to

---

12. *See generally Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (hereinafter *"Twombly"* and *"Iqbal"*).

determine whether each allegation, in isolation, is plausible.

*Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir.2009)(citations omitted). *See also Brown v. Medtronic, Inc.,* 628 F.3d 451, 459 (8th Cir.2010).

## B. Heightened Requirement for Actual Fraud Claims

■ In addition to meeting the requirements under *Twombly* and *Iqbal,* the Plaintiffs must also meet the requirements of Fed. R. Civ. P. 9(b), as incorporated by Fed. R. Bankr. P. 7009, for all actual fraud claims. Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires plaintiffs "to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Freitas v. Wells Fargo Home Mtg., Inc.,* 703 F.3d 436, 439 (8th Cir.2013) (quoting *Summerhill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir.2011)); *Crest Constr. II, Inc. v. Doe,* 660 F.3d 346, 353 (8th Cir.2011) (same). This particularity requirement does not apply to malice, intent, knowledge or other conditions of a person's mind, which may be alleged generally. Fed. R. Civ. P. 9(b).

## C. Consideration of extrinsic material

Here, the Defendants argue that the Court should consider extrinsic documents, specifically the Merger Agreement between PCB and Polaroid, the Revolving Credit Agreement for the Polaroid Credit Facility, as well as almost a thousand pages of additional extrinsic material as part of the Complaint and in support of their affirmative defenses. The Defendants argue that the Court should consider the extrinsic documents because the Plaintiffs have deliberately and improperly omitted these essential materials to avoid dismissal of the complaint. Second, the Defendants

argue that the documents conclusively establish a number of affirmative defenses that are grounds for dismissal.

■ When considering a complaint for dismissal the Court should limit its review to the four corners of the complaint. *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999). Similarly, an affirmative defense is grounds for dismissal only if it is obvious from the face of the complaint. *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F.3d 978, 983 (8th Cir.2008). The Court may consider, however, materials that are part of the public record or do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings.'" *Porous Media Corp.* 186 F.3d at 1079 (*internal citations omitted*). Documents necessarily embraced by the complaint are those which form the basis of a plaintiff's complaint or are integral to the claim. *Miller v. Redwood Toxicology Lab., Inc.,* 688 F.3d 928, 931 (8th Cir.2012); *see also BJC Health Sys. v. Columbia Cas. Co.,* 348 F.3d 685, 688 (8th Cir.2003).

Here, the Defendants' arguments are not persuasive. First, the Defendants fail to show that the Plaintiffs deliberately omitted the extrinsic documents in order to avoid dismissal.

Second, the extrinsic documents the Defendants urge the Court to consider are not necessarily embraced by the pleadings. The contents of the documents are not alleged in the complaint, but are referenced superficially. The avoidance causes of action are not based on the merger and loan documents themselves, rather these causes of action are based on the assertions that property left the possession of one of the Debtors and ended up with one of the Defendants. Although the documents provide some evidentiary support for the facts alleged in the complaint, they

do not form the basis of, and are not integral to, the causes of action. *See Lacy v. Valmont Indus., Inc.*, No. 8:15–CV–3070, 2016 WL 3014656, at *3 (D.Neb. May 24, 2016), *BJC Health Sys.*, 348 F.3d at 687.

Third, the affirmative defenses of mere conduit and safe harbor are not obvious from the face of the complaint, as will be discussed below.

■ Consideration of extrinsic documents does not eliminate the intent behind Rule 12(b)(6) that a motion "will succeed or fail based upon the allegations contained in the face of the complaint." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992). Consideration and reliance on the hundreds of pages of extrinsic documents here would necessarily turn this into a motion for summary judgment, which is not the motion now before the Court. *See Hamm v. Rhone–Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir.1999). Thus, the Court will not consider the extrinsic documents as part of these motions to dismiss.

## IV. ANALYSIS

The labels given to the various transactions in this decision are different from those used by the Plaintiffs in the Complaint. While the Plaintiffs identify the transactions subject to avoidance by time, it is easier, and more logical, to group the transactions by type. The Court's analysis is lengthy as each type of transfer (the Acquisition Transfers and, the Polaroid Credit Facility Obligation, Pledge, &

Transfers) will be discussed in the sequence found in the Complaint and, as necessary, as to the individual Plaintiffs.

The claims dismissed will not be dismissed with prejudice for futility, unless otherwise noted. The causes of action dismissed are largely due to a lack of detail, rather than an impossibility to state a claim. *See Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir.2008).

### A. The Polaroid Acquisition Transfers

#### i. Count II—Actual Fraud—11 U.S.C. §§ 548(a)(1)(A), 550(a), 551, and 1106

The text of the Complaint limits avoidance under Count II to the "Two Year Transfers," meaning the Plaintiffs seek avoidance of only those transfers that occurred within two years of PCI's petition date, October 11, 2008,[13] which mirrors the two year look back period in § 548. The Plaintiffs allege that the sale for the acquisition of Polaroid closed on April 27, 2005. Any transfer made to the Defendants for purchase of Polaroid stock is therefore outside the time frame of Count II as the petitions were filed more than two years later. The Plaintiffs initially stated in their response brief that they would not seek to avoid any transfers under Count II[14] that occurred outside the two year look back, which would have included the Acquisition Transfers. However, in a later submission, the Plaintiffs made a lengthy argument that the two year look back period in

---

13. The reference to solely the PCI petition date by the Plaintiffs is incorrect. The look back period under § 548 is triggered by the petition date of a particular debtor. Since not every Debtor in these proceedings filed their petition on the same date as PCI, defining the transfers in this manner fails to adequately identify transfers subject to avoidance in Count II for the other Debtors.

14. *See* Adv. No. 10–4443, ECF No. 25, ("Because Section 548 is limited to transfers occurring within two years of the filing of the bankruptcy petition, Count III applies only to those transfers made within two years of the bankruptcy filing of PCI and PGW on October 11, 2008."). Though this comment is facially limited to Count III, the same logic would apply to Count II.

§ 548 can be equitably tolled as a statute of limitations and, thus, the Acquisition Transfers can be avoided under Count II.[15] The Plaintiffs' equitable tolling argument will be addressed first.

■■■ A statute of limitations may be equitably tolled but a period of time that is a substantive element of the cause of action may not. *See In re Pitt Penn Holding Co., Inc.*, Adv. No. 11–51868, 2012 WL 204095, at \*4 (Bankr.D.Del.2012); *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Statutes of limitation "bear on the judicial process for enforcing the rights and duties recognized by the substantive law." *In re Pitt Penn Holding Co., Inc.*, Adv. No. 11–51868, 2012 WL 204095, at \*3–4 (Bankr.D.Del.2012). Further, statutes of limitation serve to " 'regulate secondary conduct, i.e., the filing of a suit, not primary conduct, i.e., the actions that gave rise to the suit.' " *Id.*

■■■ Section 548's two year look back time period is not a statute of limitations and does not serve the purpose of ensuring that a party is diligent in exercising its rights. Rather, it is a substantive element of the § 548 cause of action as it refers to the "... universe of transfers that are avoidable under § 548." *In re Pitt Penn* at \*3. The look back period is an integral part of the cause of action and inherent to the grant of power. *Id.* Thus, it is not subject to equitable tolling.

Plaintiffs rely on *Waugh v. IRS (In re Waugh)*, 109 F.3d 489 (8th Cir.19970) as

supporting their position that the two year look back may be tolled. The reliance on *Waugh* is misplaced. In *Waugh*, the court held that the statutory provision at issue regulated the time period within which the Internal Revenue Service must collect taxes from a debtor. It was therefore a statute of limitations subject to equitable tolling. *Waugh*, 109 F.3d at 493. The time period for taking actions to collect taxes is similar to the time by which a trustee must file an adversary complaint.[16] The two year look back stated in § 548, however, defines the time period when the transfers occurred. This is analogous to the time period when the *Waugh* taxpayer earned the income subject to tax, i.e. the tax year. *Waugh* does not support the Plaintiffs' position.

Therefore, the claims under Count II for avoidance of the Polaroid Acquisition Transfers for actual fraud are dismissed with prejudice since they are outside § 548's two year look back period.[17]

### ii. Count III—Constructive Fraud— 11 U.S.C. §§ 548(a)(1)(B), 550(a), 551, and 1106

Count III similarly seeks avoidance of the Two Year Transfers made within two years of the PCI petition date. The § 548(a)(1)(B) constructive fraud claims have the same problem as those discussed above for Count II—they are outside the two year look back period stated in § 548. Therefore, the claims under Count III for avoidance of the Polaroid Acquisition

---

**15.** *See generally*, Adv. No. 10–4443, ECF No. 51.

**16.** 11 U.S.C. § 546 sets the time limits for taking action under § 548. Interpreting the two year look back period in § 548 as a statute of limitations would make § 546 superfluous, running counter to the cannons of statutory construction. *See e.g., Corley v. United States*, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) ("one of the most

basic interpretive canons, that " '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant...' " (citations omitted)).

**17.** The § 550 claims in Count II are also outside the look back period since they are dependent on the viability of the § 548 claims.

Transfers for constructive fraud are dismissed with prejudice.

### iii. Count IV—Actual Fraud—11 U.S.C. §§ 544(b), 550(a), 551, and 1106 & Minn. Stat. §§ 513.41(a)(1) and 513.47 [18]

Count IV is the second claim for avoidance of the Acquisition Transfers under a theory of actual fraud but it differs from Count II because it arises under 11 U.S.C. § 544(b) and MUFTA. This count also includes additional claims for relief against subsequent transferees under 11 U.S.C. § 550.

 Under § 544(b) of the Bankruptcy Code, a trustee may avoid a prepetition transfer by a debtor if such a transfer is voidable under applicable state law, here MUFTA, by a creditor with an allowable claim against the debtor. To state a claim under § 544(b), a plaintiff must identify that creditor by name in order to establish standing. *In re Petters Co., Inc.*, 495 B.R. 887, 901 (Bankr.D.Minn. 2013). Here, the Plaintiffs failed to identify any creditor by name. Thus, there is no standing to bring the claims under Count IV or any other claim under § 544(b). Normally this alone would be grounds for dismissal under Fed. R. Civ. P. 12(b)(6) but given the unique procedural posture of these adversary proceedings, and the claw back litigation as a whole, the remainder of the Complaint will be analyzed independent of this deficiency.[19] The Court directed the Plaintiffs in other adversary proceedings to amend those complaints to

specify creditors and, as discussed below, it will do so here as well.

Unlike the claims arising under § 548, the claims under § 544 are not limited by a two year look back period. Rather, under MUFTA, the look back period is six years from the petition dates. The issues surrounding the limitations period under § 544 and MUFTA have already been decided in these cases at *In re Petters Co., Inc.*, 495 B.R. 887, 901 (Bankr.D.Minn. 2013). The Acquisition Transfers occurred April 27, 2005, and therefore fall within MUFTA's six year look back period and are timely.

 MUFTA governs the substantive allegations contained in Count IV, while the Federal Rules govern the pleading standards. *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir.2013) ("We apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law"). In addition, the Plaintiffs must meet the pleading specificity requirements of *Twombly, Iqbal,* and Fed. R. Civ. P 9(b) for these actual fraud claims. *Id.*

 To state a claim for avoidance for actual fraud under MUFTA and Minn. Stat. § 513.44(a)(1), a plaintiff must allege that a debtor made a transfer with the actual intent to hinder, delay, or defraud its own creditors. Here none of the Plaintiffs have alleged that their respective debtors made a transfer to any of the Defendants. Therefore, the § 544(b) and MUFTA claims against the Defendants as

---

**18.** The Complaint contains a reference to "or other governing fraudulent transfer laws." *see e.g.,* Adv. No. 10–4443, ECF No. 1. No other laws have been identified in the Complaint or by the briefing. So this claim, and all § 544(b) claims, will be analyzed strictly on application of law of the state of Minnesota as cited in the Complaint.

**19.** After the three Common Issues decisions were issued, the Court entered an order directing the trustee to amend the Complaint in compliance with the rulings made in those decisions. The adversary proceedings here were exempt from that order because of their unique status.

initial and/or subsequent transferees are dismissed without prejudice.

### a. Defendants as initial transferees

In order to state a claim under MUFTA, the Complaint must identify the transfers made by any Debtor to any particular Defendant. Here, the Complaint is deficient. The Plaintiffs do not allege with any particularity that the funds were in fact property of any particular Debtor, what amounts were transferred, to whom the funds were transferred, or how they ended up in the possession of the end recipient.[20] The only facts alleged involve PCB as transferor. The Plaintiffs allege that PCB was required to aggregate funds for the purchase of Polaroid into one of two Escrow Accounts (¶ 30); those Escrow Accounts were in the name or control of both PCB and PGW (¶ 80); the money in the Escrow Accounts was transferred to the shareholders of Polaroid, including defendants (¶ 28); that JPMC received more than $240 million when PCB acquired Polaroid (¶ 27); and that JPMC sold its ownership stake to PCB (¶¶ 67, 86).

There is nothing in these allegations, or the remainder of the Complaint, which allows the Court to infer that any of the Debtors were initial transferees. The only reasonable inference to be drawn from the facts alleged is that PCB was the only initial transferor for the Acquisition Transfers.[21]

Conversely, the Plaintiffs have failed to properly identify a Defendant recipient of the transfers. In ¶ 108, the Plaintiffs allege that One Equity is liable for all transfers it received for its 18.7 million shares of stock, as well as all transfers its "affiliates" received for their 1.3 million shares. The Plaintiffs go on to explain that "to the extent One Equity seeks to disclaim transfers received by its affiliates" they seek to recover from the Individual Defendants. ¶ 109. Before the end of the sentence, however, the Plaintiffs state they "seek to recover from JPMC transfers totaling $241,600,000 that JPMC and its affiliates received from the Petters Escrow Accounts." Id. The Plaintiffs define "JPMC" as referring to JPMorgan, JPM Chase Bank, One Equity, and the "JPMC Affiliate Defendants." The JPMC Affiliate Defendants are five of the eight Individual Defendants.[22]

The Court is unable to determine from the Complaint who received the money. It is unclear if One Equity was the initial transferee and its affiliates were subsequent transferees or if all of the Defendants were initial transferees, or some JPMorgan party was the initial transferee, etc. The Plaintiffs' catch-all assertions that "[transfers] were made to or for the benefit of defendants," (¶ 123) and "[t]o the extent that any defendant is not an initial transferee...it is an immediate or mediate transferee," (¶ 124) are formulaic recitations of the language of § 550 and do not resolve the ambiguity. See 11 U.S.C. § 550(a). The Complaint fails to describe one or more subsequent transfers from One Equity to any party. Here there are too many reasonable possibilities for how

---

20. There is a general statement of the amount in ¶ 7 but since the Plaintiffs define "JPMC" as including all Defendants, it is impossible to tell which defendant received what amount of money, how they received it and when it was received.

21. The Plaintiffs' argument that ¶¶ 7, 27, and 108 properly allege direct transfers is incor-

rect. Adv. No. 10–4443, ECF No. 25. These allegations state that the Defendants received a large sum of money in exchange for their stock.

22. Adv. No. 10–4443, ECF No. 25, fn. 3 from ¶ 12.

this money ended up with each of the Defendants once it left the Escrow Accounts for the Court to conclude the Plaintiffs have shown a plausible claim for relief in Count IV.

The next deficiency in Count IV is that the Complaint includes a specific allegation that Petters Capital "had no operating business and appears to have been formed solely as a conduit through which PCI money or that of its lenders flowed into the Petters Escrow Accounts." ¶ 81. This assertion contradicts an inference that the property transferred from Petters Capital into the Escrow Accounts belonged to Petters Capital. If the transfer subject to avoidance was not property of the debtors, then a trustee has no cause of action. Minn. Stat. § 513.44(a).

Further, Stoebner has not sufficiently alleged his standing to pursue Count IV on behalf of the Polaroid estate. He fails to state facts to support the conclusory and vague allegation that Polaroid is the "successor in interest" to PCB. ¶ 3. This issue has been previously discussed in *Stoebner v. Opportunity Finance (In re Polaroid Corp.)*, 543 B.R. 888, 891 (Bankr.D.Minn. 2016), *appeal transferred* (Feb. 5, 2016).

In *Stoebner v. Opportunity Finance*, the Court ruled that Stoebner did not have standing to avoid transfers made by PCB (there referred to as PettersCB) because as the "steward of the [Polaroid] estates" he had "no legal status at all, directly as to [PCB], [its] creditors if any, and any of [its] past business activity." *Id.* at 900. The Court held that the allegation that Polaroid was the "successor in interest" to PCB failed to state sufficient facts to state a claim. *Id.* Further, the Court found that the pleading failed to allege the existence of a PCB creditor with a legally viable claim against Polaroid sufficient to pierce the barrier of corporate separateness between Polaroid and PCB pre-acquisition.

*Id.* at 901. In other words, assuming there was a merger, "how could a creditor of Polaroid have justified reaching back beyond the line of April, 2005, to sue a transféree of PCB ?" *Id.* The Court ruled that it was possible such a series of events could have unfolded in a very specific way, but there were no allegations in the complaint to support that narrative. *Id.*

The same pleading deficiencies in Stoebner's case against Opportunity Finance are present here. There are no facts that establish that a creditor of Polaroid could have sued to avoid past transfers by PCB, nor are there any factual allegations that Polaroid would have legally succeeded to PCB as a debtor liable to any of PCB's creditors.

For all of these reasons, the claims by the Plaintiffs in Count IV are dismissed without prejudice.

### b. *Defendants as subsequent transferees*

Section 550 permits a trustee to recover from a subsequent transferee "to the extent a transfer is avoided" against an initial transferee under §§ 544 or 548. 11 U.S.C. § 550(a) (2015). A viable claim for avoidance under §§ 548 or 544(b) is an indispensable condition to validly asserting a claim under § 550(a). Under § 550(a), a plaintiff must allege facts that plausibly support the elements for both the avoidance of 1) the initial transfer and 2) the subsequent transfer.

Here the § 550(a) claim for avoidance of the "subsequent" transfers from PCB to the Defendants is based on the predicate avoidance of the transfers made by the Debtors to fund the Escrow Accounts. The Complaint alleges that PCI made transfers to PCB by depositing funds into the Escrow Accounts in 2005. ¶ 82. The allegations assert that Tom Petters used PCI and Petters Capital to run his scheme, that they had no real business,

and that he controlled them. ¶¶ 1, 4, 38-52. The Plaintiffs contend that every transfer by a Petters entity in connection with the acquisition was made with the actual intent to hinder, delay or defraud. With respect to the initial transfers from PCI to PCB, the Plaintiffs have alleged a sufficient number of badges of fraud such that the Court can infer the initial transfers were made with the intent to defraud. *See* Minn. Stat. § 513.44(b (2015).

With the exception of identifying the predicate creditor, the Plaintiffs have alleged enough in the Complaint to establish the elements of a § 544(b) claim to avoid the transfers from PCI to PCB, the initial transfer.

Plaintiffs have not, however, satisfied the requirements for stating a claim under § 550(a) because they fail to allege which Defendant is a subsequent transferee. Every fraudulent transfer count in the Complaint fails for the following reasons:

1) Because the § 544 claims against One Equity by each of the Plaintiffs have been dismissed above, there can be no claim against JPMC or the Individual Defendants as subsequent transferees of One Equity.

2) Plaintiffs have failed to plead sufficient facts to identify transfers made by PCB, the mechanism by which the property found its way to the Defendants, or the identity of the recipient(s) of those purported transfers.

3) There is no factual support for the catch-all allegation that "to the extent that any defendant is not an initial transferee...it is a subsequent transferee of the initial transferee."

Because of the failure to adequately allege facts for recovery of the subsequent transfer under § 550(a), those claims by PCI are dismissed.

Similarly, as for claims by PGW and Polaroid, the Complaint contains no allegations that either of them funded the Escrow Accounts. Rather, the Complaint alleges that Petters Capital funded the Escrow Accounts with property that belonged to defrauded investors and that Petters Capital was a mere conduit. If accepted as true, then any property that flowed from Petters Capital to the Escrow Accounts was not its property, thus not property of the Debtors and thus not subject to avoidance by the Seaver.

There are no other facts alleged from which to infer that some other initial transfer was made by any of these Debtors to the Escrow Accounts, or to another party who made a subsequent transfer to the Defendants.

For these reasons the subsequent transferee claims by PGW, Polaroid, and Petters Capital stated in Count IV are dismissed without prejudice.

iv. Counts V, VI, VII—Constructive Fraud—11 U.S.C. §§ 544(b), 550(a), 551, and 1106 & Minn. Stat. §§ 513.44(a)(2)(i), (a)(2)(ii), 513.45(a), and 513.47

 Counts V, VI, and VII in the Complaint are all constructive fraud claims arising under § 544(b) and MUFTA. Each claim requires a plaintiff to allege a transfer by a debtor of its own property for less than reasonably equivalent value, plus the existence of some attendant characteristic.[23]

---

**23.** *See* Minn. Stat. § 513.44(a)(2)(i) (2015) (the Debtor "has engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;"); § 513.44(a)(2)(ii) (the Debtor "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."); § 513.45(a)

### a. Defendants as initial transferees

■ These constructive fraud claims have the same deficiencies as the Count IV Acquisition Transfer claims already discussed. The Plaintiffs have not identified a predicate creditor that furnishes them with standing, they have not identified a specific pre-petition transfer by their Debtors to the Defendants, and they have not sufficiently identified the Defendant(s) as initial or subsequent transferee(s). Thus, these claims are dismissed without prejudice. *See In re Petters Co., Inc.*, 495 B.R. 887, 917 (Bankr.D.Minn.2013).

### b. Reasonably equivalent value

■ The lack of reasonably equivalent value is an essential element of the cause of action under MUFTA. Here, to the extent that any of the Debtors made transfers directly to the Defendants as initial transferees for the purchase of the Polaroid stock, the Plaintiffs have failed to allege in the Complaint that the $12.08 price per share that was paid for the stock was less than reasonably equivalent value of the stock itself. For the Plaintiffs to successfully maintain their claim, they must allege that the value exchanged was not reasonably equivalent and plead facts to support that allegation. They did not do so.

The only allegation in the Complaint directly addressing reasonably equivalent value is a formulaic recitation that "[t]he Debtors received less than reasonably equivalent value for the [t]ransfers...." ¶ 146. The Court is free to ignore this type of allegation as it is an insufficient pleading under *Twombly* and *Iqbal*. *See Wiles v.*

*Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir.2002).

The Plaintiffs did not raise the argument that the price per share was not reasonably equivalent to the shares received until responding to the Defendants' arguments in briefing.[24] This is inadequate to supplement the complaint.[25] *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir.1989).

There is also a lack of detail regarding the advisory fees paid at closing. ¶ 83. For example, it is not clear who JPMC advised, who was obligated to pay the fees, or what Debtors' property was used to pay those fees. The claims for avoidance of the payment of the advisory fees are also dismissed without prejudice.

Therefore, the constructive fraud claims for avoidance of the Acquisition Transfers in Counts V, VI, and VII, are dismissed without prejudice.

### c. Defendants as subsequent transferees

■ To recover against the Defendants under § 550(a) in Counts V, VI, and VI as subsequent transferees, Kelley must plead the avoidability of the transfers from PCI to PCB on a theory of constructive fraud under MUFTA. This requires Kelley to allege that PCI transferred property to the Escrow Accounts for less than reasonably equivalent value and at the time of the transfers PCI had an unreasonably small number of assets, incurred debts beyond its ability to pay as they came due, or was insolvent or became insolvent as a result of the transaction. The allegations surrounding the value exchanged between

("the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.").

**24.** Adv. No. 10–4443, ECF No. 25, pg. 34

**25.** Similarly, the Defendants' argument in their motion that the price was "comfortably

within the trading range" is not appropriately considered here. Adv. No. 10–4443, ECF No. 23 at 30. Even if it were considered, the Defendants' assertion creates a contested fact issue, rather than grounds for dismissal with prejudice.

PCI and PCB, as presumed owner of the Escrow Account, are vague. There is no direct allegation regarding value exchanged. There is, however, an implication that some kind of debt arrangement was agreed upon between PCI and PCB but no details are provided. The "allegations nominally of fact [are] so indeterminate that they require 'further factual enhancement' in order to state a claim." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d at 594.

■ The claims for avoidance of the transfers between PCI and PCB also lack facts about PCI's financial condition at the time of the transfers. Kelley cannot use the Ponzi scheme presumption[26] and allege simply that there was a Ponzi scheme as the fact supporting the insolvency element. *Finn v. Alliance Bank,* 860 N.W.2d 638 (Minn.2015). The only presumption available under MUFTA, in accordance with the recently issued decision in *Kelley v. Opportunity Finance,* is that at some point, the corporate entity—while engaging in a Ponzi scheme—dipped into insolvency and never recovered. *In re Petters Co., Inc.,* 550 B.R. 457, 470 (Bankr.D.Minn. 2016). No allegation to that effect has been included in the Complaint.

Because of the failure to allege initial transfers by any of the Debtors of their own property to the Escrow Accounts, a condition precedent to § 550(a) claims, the subsequent transferee claims under § 550 of PGW, Polaroid, and Petters Capital in Counts V, VI, VII are dismissed. Similarly, the § 550 claims in Counts V, VI, and VII brought on behalf of PCI by Kelley are also dismissed for failure to sufficiently plead facts to support avoidance of the initial transfers to the Escrow Accounts.

### v. Dismissal with prejudice & the application of an affirmative defense under 11 U.S.C. § 546(e)

■ The Defendants take the position that the Plaintiffs cannot resolve the Complaint's deficiencies regarding the Acquisition Transfers because they have an affirmative defense under the safe harbor provisions of 11 U.S.C. § 546(e). *See In re Forex Fid. Int'l,* 222 Fed.Appx. 806, 807 (11th Cir.2007). Thus, they argue that the Complaint should be dismissed with prejudice.

An affirmative defense is only grounds for dismissal if the defense is clear from the face of the complaint. *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F.3d 978, 983 (8th Cir.2008). The Defendants argue that the defense is clear from the face of the complaint. The Court disagrees.

First, the complaint does not allege that any of the Debtors made a transfer to the Defendants as initial transferees for the purchase of the Polaroid stock. The only allegations are that PCB transferred money and was the purchaser of the Polaroid stock. Thus, there is nothing obvious on the face of the complaint that show a § 546(e) defense is available to the Defendants for claims brought by the Plaintiffs.

Second, the statutory language in § 546(e) does not bar recovery under § 550. The argument that the predicate transfers to the Escrow Accounts, avoidable under § 544(b) as initial transfers, fall within the protections of § 546(e) are not based on the facts as alleged. The initial transfer here, made before a subsequent transfer for the purchase of stock may or may not be a "settlement payment," made "in connection with a securities contract," or otherwise fit within the parameters

**26.** The Ponzi scheme presumption operates to permit an inference that an actor running a Ponzi scheme always acts with fraudulent in-

tent in furthering the scheme. *In re Petters Co., Inc.,* 495 B.R. 887, 907 (Bankr.D.Minn. 2013).

§ 546(e) because the Complaint does not allege that any securities were exchanged between the initial transferor and the subsequent transferor nor does it allege the initial transferor is a party to a contract for the purchase of securities.

Defendants have failed to show that a safe harbor affirmative defense is obvious from the face of the Complaint. Defendants, therefore, are not entitled to dismissal on that basis.

## B. The Polaroid Obligation, the Polaroid Pledge, & the Polaroid Credit Facility Transfers

The Court will now analyze the series of transactions between Polaroid and JPMC after the acquisition by Tom Petters through PCB. Briefly, Polaroid borrowed approximately $185 million through a credit facility with JPMC. Polaroid granted JPMC a first lien against all of the Polaroid assets to secure the indebtedness. Polaroid repaid the loans within approximately three years.

The Plaintiffs seek to avoid the incurrence of the debt (Polaroid Obligation), the pledge of assets including the lien (Polaroid Pledge) and all transfers made in repayment of the loans (Polaroid Credit Facility Transfers) as actual and constructively fraudulent transfers.

### 1. Dismissal of Petters Capital & PGW's Claims

First, there are no allegations that Petters Capital or PGW obligated themselves in any way under the Polaroid Credit Facility, pledged any assets, or made any transfers to JPMC in repayment of the Polaroid Obligation. There are no allegations that Petters Capital or PGW transferred any property to Polaroid that Polaroid subsequently transferred to JPMC in connection with the Obligation, Pledge, or Credit Facility. All allegations involving Petters Capital are limited to the funding of the Escrow Accounts related to the Polaroid stock acquisition. All allegations involving a PGW credit facility repayment are limited to transfers PGW made to the JPMC Defendants in repayment of its own credit facility, not the Polaroid Credit Facility. Therefore, Petters Capital and PGW's claims for Counts II, III, IV, V, VI, and VII as they relate to the Polaroid Obligation, the Polaroid Pledge, and the Polaroid Credit Facility Transfers are dismissed without prejudice.

### 2. Dismissal of PCI's claims

PCI, like Petters Capital and PGW, did not obligate itself in any way under the Polaroid Credit Facility, pledge any assets, or make any transfers to JPMC as initial transferee in repayment of the Polaroid Obligation. Therefore all claims alleged by Kelley on behalf of PCI against the JPMC Defendants as initial transferees in Counts II, III, IV, V, VI, and VII as they relate to the Polaroid Obligation, the Polaroid Pledge, and the Polaroid Credit Facility Transfers are dismissed without prejudice.

There is one allegation in the complaint that PCI lent Polaroid money so that Polaroid could repay JPMC on the Credit Facility. This allegation contains no other detail regarding the terms of the transaction between PCI and Polaroid, precisely where the money went, when exactly the transfer was made, if it was a single transfer, or if there were multiple transfers. To the extent that PCI seeks to recover against the JPMC Defendants as subsequent transferees, that claim is dismissed for failure to sufficiently allege facts to support a plausible §§ 548 or 544(b) claims against Polaroid and consequently a § 550(a) claim against the JPMC Defendants.

### 3. Polaroid's Claims

This leaves the claims of Stoebner seeking to avoid the Polaroid Obligation, Polaroid Pledge and Polaroid Credit Facility Transfers. The pleading requirements discussed above in the analysis of the Acquisition Transfers apply here as well and will not be restated.

#### i. Count II—Actual Fraud—11 U.S.C. §§ 548(a)(1)(A), 550(a), 551, and 1106

##### a. The Polaroid Obligation and the Polaroid Pledge

According to the Complaint, Polaroid closed on the credit facility on April 28, 2005, and the inference can be made that the pledge of assets for the lien occurred on the same day. Since Polaroid's petition date was December 16, 2008, the look back period for avoidance under § 548 goes back to December 16, 2006; both the Polaroid Obligation and the Polaroid Pledge are outside that window. Thus, these claims are outside the time period stated in § 548 and are dismissed with prejudice.[27]

■ With respect to the Polaroid Credit Facility Transfers, the Complaint fails to state sufficient facts to assert a claim. Since Count II is a claim for actual fraud, the heightened pleading requirements from Fed. R. Civ. P. 9(b) apply, which requires a plaintiff to plead the newspaper elements. The Court can infer that Polaroid was the transferor and that

the property transferred was property of Polaroid, however, the Court is unable to infer which Defendant or Defendants were transferees.

There is one allegation in ¶ 27 that JPMorgan provided Polaroid a credit facility after the acquisition. Later in ¶ 67, the Plaintiffs allege that JPMC was the financier for Polaroid and acted as a syndicate manager for a number of banks that would participate in the loans to Polaroid. Again in ¶ 100, the Plaintiffs make reference to JPMC as lender. The Defendants argue that JPMorgan is not a proper defendant and that all JPMC parties were only conduits on this Credit Facility.[28]

Plaintiffs must allege that a particular defendant received a particular transfer of Polaroid's property on a particular date; they must plead with particularity. Referring to the Defendants collectively as "JPMC" does not meet this standard. The fact allegations are vague and broad and the Court cannot infer who the transferee was or in what capacity it was a transferee.[29]

■ The Defendants assert another affirmative defense—that they were mere conduits. *See e.g., In re Circuit All., Inc.,* 228 B.R. 225, 233 (Bankr.D.Minn.1998). The Defendants contend the reference to a "syndicate manager" absolves them of any liability on these claims and conclusively establishes they were, not a lender, but

---

**27.** To the extent any other Plaintiff would be able to establish standing to sue under Count II or III for the avoidance of the Obligation and Pledge as an initial transfer, they too would be outside the look back period.

**28.** The remainder of the argument between the parties is under an alter ego theory. None of the facts the parties argue about in their briefs are alleged in the Complaint. These are not now properly before the Court.

**29.** In the event any Defendant is a subsequent transferee, the Plaintiffs' argument on this point fails. The Plaintiffs' argument that including the conclusory assertion that "in the event..." as a safety net somehow saves the Complaint is wrong. Adv. No. 10–4443, ECF No. 25 at 60–61. The back-up subsequent transferee allegation is nothing more than a hedged legal conclusion devoid of any factual content showing the Plaintiffs are entitled to relief or to whom the language even applies to in the first instance.

merely a conduit for other lenders.[30] This term alone, does not show that any or all of the Defendants was a conduit. A syndicate manager could be both a lender and a manager of the Credit Facility. The particular facts are not stated on the face of the complaint. Defendants urge the Court to consider materials extrinsic to the Complaint. As stated earlier, the Court will not do so.[31]

The Court finds that the mere conduit defense is not obvious from the face of the complaint such that dismissal should be with prejudice. Instead the claims under Count II are dismissed without prejudice for failure to particularly plead the required facts. This ruling on the lack of mere conduit defense similarly applies to remaining claims III, IV, V, VI, and VII.

b. Avoidance of Loan Repayments

■ Next, the Court addresses the avoidance of the loan repayments. According to the Complaint, the Term Loan was repaid in full sometime around May 2007, and the Revolver in February 2008. No specific transfers, amounts, or dates are identified in the Complaint. Because of the lack of detail, Count II as it relates to Kelley's avoidance of the loan repayments is dismissed without prejudice.

■ Stoebner has also failed to sufficiently allege the fraudulent intent element required as it relates to avoidance of the loan repayments. The conclusory allegation in ¶ 122 that the transfers were made with the actual intent to hinder delay or defraud is insufficient to state a claim. Since Polaroid is a corporation, its intent must be derived from the control of some human person(s). *See Morris v. Union Pac. R.R.*, 373 F.3d 896, 902–03 (8th Cir.2004) ("[A]

finding of intent is a highly contextual exercise.... When a corporation is involved, the inquiry depends ... to some extent on the intent of corporate employees, not all of whom will play the same role in every case."). The complaint alleges that Tom Petters was the Chairman and sole member of the Board of Directors. ¶ 3. But the complaint also alleges that Petters appointed Mary Jeffries as CEO of Polaroid. ¶ 59. Thus, the Complaint does not establish that the transfers made by Polaroid in alleged repayment of the loan obligation was the unilateral decision of Tom Petters such that his intent can be imputed to Polaroid as a corporation-transferor. *Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857, 862 (8th Cir.2015) ("Because Petters unilaterally granted these liens on Polaroid's behalf, his intent in transferring the liens was that of Polaroid.")

Even assuming Petters had control over Polaroid, the remaining fact allegations do not demonstrate a plausible narrative that Petters had the intent to defraud Polaroid's creditors when making the Polaroid Credit Facility Transfers. There are no fact allegations directly establishing intent or indirect allegations of this intent through the badges of fraud. Rather, it is clear from the complaint that Polaroid was run as a legitimate, non-fraudulent company, despite its ultimate demise. It was not used as the vehicle for the main churn of the Petters' Ponzi scheme.

Despite repeated allegations that the Defendants lacked good faith, there are no allegations that the Defendants were insiders or engaged in any scheme with Petters in making the loan repayments. Rather, the allegation that JPMC pressured Pet-

---

**30.** Adv. No. 10–4443, ECF No. 23, pg. 7

**31.** The repeated urging by the Defendants to consider material outside the Complaint contradicts their position: if the affirmative de-

fense is obvious from the face of the Complaint, the Court should not have to review hundreds of pages of extrinsic material to see it.

ters into repaying the loans belies an inference that Petters generated the intent to defraud Polaroid's creditors.

Intent is also not shown by Stoebner under a Ponzi scheme presumption sufficient to allege fraudulent intent in Count II. Tom Petters' scheme to defraud investors has been well documented. He fraudulently induced investors into lending him money, through PCI, and then paid off old investors with money lent from newly defrauded investors. Transfers in this main churn are the most obvious examples of "in furtherance of a scheme." The loan repayment transfers here do not fit within the parameters of "in furtherance" of Tom Petters' scheme. Polaroid was not running a scheme. It sold real products, secured debt with those products, generated real revenue, and partially serviced the debt through sale of their own assets. The allegation that Polaroid had to borrow money from PCI to pay off the Defendants does not cast doubt on the nature of the repayment transfers or make them part of the main churn. While there are allegations that PCI may have defrauded investors for repayment of the Credit Facility, there are no allegations that Polaroid did. Thus, there are insufficient factual allegations to permit application of the Ponzi scheme presumption to Polaroid's repayment of the Credit Facility to establish fraudulent intent.

For these additional reasons, the Plaintiffs have failed to sufficiently allege the existence of fraudulent intent by Polaroid in repayment of the Credit Facility to state a claim for relief under Count II and it is dismissed without prejudice.

### ii. Count III—Constructive Fraud— 11 U.S.C. §§ 548(a)(1)(B), 550(a), 551, and 1106

The claims asserted by Stoebner on behalf of Polaroid under Count III are subject to the same treatment and outcome of those under Count II. For the sake of clarity, though, the claims for avoidance of the Polaroid Obligation and Polaroid Pledge under Count III are dismissed with prejudice as they fall outside the § 548 look back period. The claims for avoidance of the Polaroid Credit Facility Transfers in Count III are dismissed without prejudice for failure to state a claim due to the lack of fact pleading to support the elements of the cause of action and, in particular, failure to properly identify a defendant and the subject transfers.

■ An additional basis for dismissal of Count III is the lack of factual allegations that the transfers were made for less than reasonably equivalent value as required by § 548(a)(1)(B). The Plaintiffs allege that all of the Credit Facility Transfers were made in repayment of an antecedent debt. Repayment on a valid and enforceable antecedent debt is reasonably equivalent value as a matter of law. 11 U.S.C. § 548(d)(2)(A); *see also In re Rosen Auto Leasing, Inc.*, 346 B.R. 798, 805 (8th Cir. BAP 2006) ("By delivering the Check to Mr. Gratton, Rosen Auto relieved itself of an outstanding debt equal to the face amount of the Check. Rosen Auto obtained reasonably equivalent value because the Check satisfied Mr. Gratton's claim against it.); *In re Petters Co., Inc.*, 495 B.R. 887, 917 (Bankr.D.Minn.2013) (citing *Rosen*); *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 478 (7th Cir.2005). The allegations here do not support the application of the theory enunciated in *Scholes v. Lehman* that payment of interest in a Ponzi scheme is not reasonably equivalent value, because the payments made by Polaroid were not part of the Ponzi scheme. *See generally, Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir.1995); *see also Common Issues II*, 495 B.R. 887.

Stoebner has made no viable claims under Count III that would otherwise invali-

date the Obligation or the Pledge such that the value provided in repayment through the Credit Facility Transfers is not per se reasonably equivalent. As a result, Stoebner's Count III as it relates to the repayment of the Credit Facility does not contain sufficient fact allegations to support the cause of action and is dismissed without prejudice.

### iii. Count IV—Actual Fraud—11 U.S.C. §§ 544(b), 550(a), 551, and 1106 & Minn. Stat. §§ 513.41(a)(1) and 513.47

■ Both Count II and Count IV are claims for avoidance under the theory of actual fraud. The substantive law governing Count II, the Bankruptcy Code, and Count IV, MUFTA, is not dramatically different. The main differences are that the look back period for avoidance under MUFTA is six years, and the plaintiff must still identify a creditor by name to establish standing under § 544(b). The differences in the law under Count IV do not change the outcome from that in Count II. Stoebner has not identified a creditor by name on whose behalf he has standing under § 544(b), which is grounds for dismissal. Though the Polaroid Obligation and Polaroid Pledge may be subject to avoidance under this claim, since the look back period extends back from the petition date a minimum of six years, the same deficiencies regarding intent to defraud exist in Count IV as they did in Count II.[32] Stoebner has not relied on, but also cannot rely on, the modified presumption as explained by the Court in *Kelley v. Opportunity Finance* since JPMC was not of the class of targeted victims in the Ponzi scheme. *In re Petters Co., Inc.*, 550 B.R. 457 (Bankr.D.Minn.2016). Further, it is no clearer in Count IV who the proper defendant is since the reference is still made to "JPMC" as a collective body.

For all these reasons Count IV is dismissed without prejudice for failure to state a claim.

### iv. Counts V, VI, VII—Constructive Fraud—11 U.S.C. §§ 544(b), 550(a), 551, and 1106 & Minn. Stat. §§ 513.44(a)(2)(i), (a)(2)(ii), 513.45(a), and 513.47

■ The three remaining counts are all constructive fraud counts asserted under § 544(b) and MUFTA. Despite adequately alleging the dire financial structure of Polaroid at the time of the Credit Facility Transfers and meeting the pleading requirements for the existence of attendant characteristics for a constructive fraud claim,[33] Counts V, VI, and VII contain many of the same deficiencies as those described in Count III.

With respect to the Polaroid Obligation and the Polaroid Pledge, Stoebner has failed to identify which of the Defendants was involved in the transfers because of the continued use of the collective term

---

**32.** Intent for a corporation under MUFTA is still derived from a natural person in control. *See e.g., Reilly v. Antonello*, 852 N.W.2d 694, 700 (Minn.Ct.App.2014) ("The district court first determined that Michael Antonello's use of his unilateral corporate authority to "transfer[ ] 98% ownership of the Corporation to his wife over a three-day period of time" was an indirect transfer under the act."). MUFTA recognizes similar badges of fraud. *See e.g.* Minn. Stat. § 513.44(b). The Minnesota Supreme Court has rejected the applicability of the Ponzi scheme presumption for fraudulent in-

tent. *See Finn v. Alliance Bank*, 860 N.W.2d 638 (Minn.2015).

**33.** The pleading requirements for the constructive fraud claims under § 544(b) are not as exacting under Rule 8 as they are for actual fraud claims under Rule 9. As such the Court can infer from the lengthy discussion in the Complaint that it is plausible that the Plaintiffs can prove at trial that Polaroid possessed at least one of the attendant characteristics.

"JPMC" when referring to the Defendants.

Stoebner also has not identified a predicate creditor by name to establish standing under § 544(b) for any of the constructive fraud claims. For these reasons Stoebner's Counts V, VI, and VII as they relate to the Polaroid Obligation and the Polaroid Pledge are dismissed without prejudice.

The claims for avoidance of the Credit Facility Transfers here fail to allege a lack of reasonably equivalent value received in exchange for the Credit Facility Repayment transfers. MUFTA has the same lack of reasonably equivalent value requirement as § 548 as discussed earlier in the analysis regarding Count III. Minnesota law also recognizes the same per se precept that repayment of an antecedent debt is reasonably equivalent value as a matter of law. *Finn*, 860 N.W.2d at 650. Here, facts are not alleged that address reasonably equivalent value.

With regard to the avoidance of the incurrence of the Obligation and Pledge under MUFTA, the Complaint fails to plausibly allege facts that Polaroid received less than reasonably equivalent value in exchange for incurring the Obligation. The formulaic recitations and legal conclusions stated in the Complaint are inadequate.

Because the Plaintiffs fail to state a claim for avoidance of the Polaroid Obligation and Pledge on a constructive fraud theory under MUFTA Counts V, VI, and VII are dismissed without prejudice accordingly.

## C. Amendment of the Complaint

In response to a number of the Defendants' arguments identifying deficiencies in the pleading, the Plaintiffs have stated they will seek leave to amend the complaint and have also identified particular amendments they would make.[34] In response, the Defendants correctly pointed out that such a request in briefing is not a formal request for leave to amend and no such request is currently before the Court.

Federal Rule of Civil Procedure 15(a)(3) states "The court should freely give leave when justice so requires." There can be no doubt that justice requires leave to amend here. The Plaintiffs have not had an opportunity to amend the Complaint in response to the Common Issues decisions from 2013; an opportunity that has otherwise been granted in most other adversary proceedings arising out of these Bankruptcy Cases. The applicable law governing the clawback litigation in these cases has shifted since these motions for dismissal were taken under advisement in the fall of 2014 and leave to amend has been granted for that reason in other cases as well. Thus, the Plaintiffs will have an opportunity to amend their pleadings consistent with those cases and with this decision without making a motion.

## V. CONCLUSION

The motions to dismiss are granted in part and denied in part. In the interest of judicial economy, the Plaintiffs' expressed intent to seek leave to amend and because the basis for granting such leave is apparent, the Court will allow amendment without further motions. After these amended complaints are filed, because these cases need to move toward final resolution, no further motions to dismiss or motions to amend the Complaint will be allowed.

## ORDER

IT IS THEREFORE ORDERED:

**34.** Adv. No. 10–4442, ECF No. 51, pp. 5, 39 at fn. 27, 48 at fn. 34.

1. The Motions to Dismiss brought by the Defendants in Adv. Nos. 10–4443, 10–4444, and 10–4445 are granted as follows:
 a. All Plaintiffs' claims for avoidance of the Acquisition Transfers in Counts II and III are dismissed with prejudice.
 b. All Plaintiffs' claims for avoidance of the Acquisition Transfers in Counts IV, V, VI, and VII are dismissed without prejudice.
 c. All Plaintiffs' claims for avoidance of the Polaroid Obligation and Polaroid Pledge in Counts II and III are dismissed with prejudice.
 d. All Plaintiffs' claims for avoidance of the Polaroid Obligation and Polaroid Pledge in Counts IV, V, VI, and VII are dismissed without prejudice.
 e. All Plaintiffs' claims for avoidance of the Polaroid Credit Facility Transfers in Counts II, III, IV, V, VI, and VII are dismissed without prejudice.
2. Count VIII for Unjust Enrichment is dismissed with prejudice for the reasons stated in *In re Petters Co., Inc.*, 499 B.R. 342 (Bankr.D.Minn.2013).
3. Pursuant to Fed. R. Civ. P. 15(a)(2), all Plaintiffs are granted leave to amend the complaints in Adv. Nos. 10–4443, 10–4444, 10–4445 in accordance with this decision and the orders issued by Judge Kishel after these motions to dismiss were filed but prior to June 1, 2016 arising out of the general clawback litigation in the Petters related adversary proceedings. Any amended complaint shall be filed no later than 30 days after entry of this order.
4. The Defendants shall answer any amended complaint within 21 days after it is filed and served.
5. After the amendments granted in paragraph 3 are filed, no further motions to dismiss or requests to amend the complaints may be filed.